RAFAEL MEJÍAS ROMÁN, lesionado, CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA, patrono, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; FONDO DEL SEGURO DEL ESTADO, asegurador.

*Número:* O-80-150        *Resuelto:* 30 de octubre de 1981

*Yolanda Morales, Antonio Acevedo Torres* y *Jorge Márquez Gómez,* abogados del recurrente; *Carlos Juan Cintrón,* abogado del recurrido.

PER CURIAM:   El caso de autos nos conduce a revisar la

adjudicación que hizo la Comisión Industrial de Puerto Rico sobre un conflicto de prueba pericial en torno a la relación que guarda cierto desbalance emocional que aqueja al obrero lesionado Rafael Mejías Román con varios accidentes sufridos en su trabajo. Resolvemos que la Comisión cometió error en su proceder y que, por tanto, procede revocar su resolución. Veamos.

### 1. *Los hechos*

El obrero Rafael Mejías Román es persona de escasa preparación académica que sólo alcanza el cuarto grado de escuela elemental. Trabajó durante su vida como obrero no diestro y luego como albañil. Ha sufrido en su trabajo pequeños accidentes lesionándose su espalda. Padece de osteoartritis de la columna vertebral con espolones y padece, además, de una neurosis depresiva severa, problema que le produce insomnio y miedo. En el caso de autos la controversia pericial se predica precisamente sobre si esta condición emocional guarda relación con los pequeños accidentes mencionados. La Comisión Industrial concluyó que sí.

### 2. *El conflicto entre los peritos*

El Dr. Guillermo J. Hoyos, siquiatra asesor de la Comisión Industrial, examinó al obrero Mejías Román, y luego de evaluarlo concluyó que la condición de inestabilidad emocional que le aqueja está relacionada con su trabajo por agravación. Según lo resume la Comisión Industrial su razonamiento fue el siguiente:

> Si se tiene en cuenta que éste es un obrero no diestro que más bien ha dependido de su cuerpo, de su fortaleza física, para trabajar, que sufre una lesión al mismo, se puede entender el desarrollo de una condición nerviosa, toda vez que siente no poder producir como antes . . . *Es probable* que con el accidente hayan [*sic*] agravado la condición de la espalda y ésto, [*sic*] a su vez, lo haya incapacitado para trabajar y el hecho de no poder trabajar y los problemas que

esto puede traer en el hogar, agraven su condición emocional. (Énfasis nuestro.)

El testimonio pericial del doctor Granada sostuvo que la artritis es una enfermedad involucional, [1] por lo que, a su juicio, "este paciente está involucionado, está deprimido, efectivamente tiene una depresión a nivel neurótico que está relacionada más con su involución que con el accidente" que había sufrido. A juicio del doctor Granada el lesionado "es un terreno abonado para proyectar él, a cualquier cosa exterior, la incapacidad por la cual está pasando gradual y sucesivamente". Relató este médico que "[e]s muy difícil reconocer que se está involucionando a este extremo y entonces es más fácil para la persona achacarlo a la enfermedad y proyectarlo". Para el doctor Granada este caso "es más proyección del paciente hacia el exterior que al revés. O sea, si no hubiese habido este accidente del trabajo este lesionado estaría involucionado y entraría en una depresión también. . . . no tiene prácticamente ninguna importancia el que el lesionado esté involucionando y haya sufrido ese accidente. Es un terreno abonado él para proyectar hacia el exterior su patología emocional y achacársela él a todo lo de afuera, que es un mecanismo de defensa elemental y como todo mecanismo de defensa es inconsciente y está a nivel del yo, para defender al yo de la angustia".

3. *Circunstancias que reflejan el error de la Comisión Industrial*

Ante esta disparidad que reflejó la prueba pericial, la Comisión, como hemos dicho, resolvió en favor del obrero lesionado.

Hemos analizado detenidamente el expediente y notamos que en ambos testimonios médicos se perciben detalles que menoscaban su valor probatorio.

---

[1] Involución, describe el Diccionario de la Lengua Española en la página 758 de su edición de 1970, es "fase regresiva de un proceso biológico, o modificación retrógrada de un órgano".

El testimonio del doctor Granada adolece de una gran dificultad consistente en que dicho galeno *nunca examinó al obrero lesionado* y emite su opinión sólo a base de lo declarado por éste en la vista pública y del estudio de los informes médicos anteriores. Su testimonio, además, es muy confuso. En buena parte de la teoría que expuso en la vista sostiene que la causa eficiente del padecimiento emocional del lesionado obedece a su condición involucional, pero luego sostiene que "no tiene prácticamente ninguna importancia el que el lesionado esté involucionando y haya sufrido ese accidente". Por otra parte, en cuanto a su teoría referente al "terreno abonado" que representaba el obrero, conviene resaltar que para que nazca el derecho a la protección de ley basta que un accidente haya sido la causa que exteriorice una condición patológica y que las predisposiciones del obrero lesionado para manifestar dicha enfermedad no derrotan su derecho a compensación. *Concepción Guzmán* v. *A.F.F.*, 92 D.P.R. 488 (1965).

Ante tal endeblez del testimonio médico ofrecido por la Administradora del Fondo del Seguro del Estado, procedería confirmar la determinación de la Comisión Industrial de no ser porque obra en autos prueba convincente que derrota la teoría médica del siquiatra de la Comisión. Recordemos que éste, Dr. Guillermo Hoyos, declaró a los efectos de que "[e]s *probable* que con el accidente hayan [*sic*] agravado la condición de la espalda y ésto, [*sic*] a su vez, lo haya incapacitado para trabajar y el hecho de no poder trabajar y los problemas que esto puede traer en el hogar, agraven su condición emocional". (Énfasis nuestro.) Nótese que en la concatenación de circunstancias que establece el doctor Hoyos para ligar la condición neurótica del lesionado con el accidente del trabajo es un elemento indispensable "el hecho de no poder trabajar", y la existencia de ese hecho quedó concluyentemente rebatida por la prueba. A esos efectos obra en autos copia de un informe en que el lesionado reclama protección del Fondo

del Seguro del Estado por un accidente que sufrió el 20 de octubre de 1977 en el cual, mientras trabajaba en el empañetado de cierto edificio, sufrió una lesión en la nuca. Ante tal circunstancia *procede revocar las determinaciones de la Comisión Industrial*, no sin antes recalcar una vez más, con renovado énfasis, que "[e]s función ineludible tanto de los abogados del Fondo del Seguro del Estado como de los Comisionados de la Comisión Industrial exigir que la prueba médica desfilada en la vista celebrada al efecto se aparte lo más posible de la especulación y la conjetura. . .". *Alonso García* v. *Comisión Industrial*, 103 D.P.R. 712, 715 (1975). Véase *Morell* v. *F.S.E.*, 110 D.P.R. 709 (1981).