GLADYS GONZÁLEZ SANTIAGO, lesionada y recurrida, *v.* FONDO DEL SEGURO DEL ESTADO, asegurador y recurrente.

Número: CE-86-73          Resuelto: 9 de diciembre de 1986

*Francisco Falú Lebrón,* abogado del recurrente; *Nelson Aponte Larrauri,* abogado de la recurrida.

SENTENCIA

Gladys González Santiago, la lesionada recurrida, para la fecha en que se reportó al Fondo del Seguro del Estado, trabajaba con la Playtex Corozal Corp. como obrera en una división con 60 a 70 operarias desde el 1976 y durante cuatro años. Tenía una tarea diaria de 22 paquetes que contenían cada uno 96 piezas; trabajaba ocho horas diarias, cinco días a la semana, con media hora disponible para almorzar.

Se vio obligada a trabajar porque se divorció del esposo y éste no le pasaba pensión alimenticia para sus tres hijos. Se reportó al Fondo del Seguro del Estado porque el ruido de las máquinas y la presión de los supervisores, para que completara la tarea, la ponían nerviosa y descontrolada. Luego de múltiples trámites, el 25 de mayo de 1983, el Fondo del Seguro del Estado decidió que:

Vistos los hechos que anteceden se resuelve que la condición de hipoacucia a frecuencias agudas del oído izquierdo que presenta la peticionaria está relacionada, por lo que se ordena otorgarle la íntegra protección de la Ley. Se resuelve, además, ratificar nuestra decisión notificada en 26 de febrero de 1980 en el sentido de que la condición emocional que presenta la peticionaria no está relacionada. Apéndice, pág. 3.

La lesionada, apeló ante la Comisión Industrial donde se celebró una vista pública el 25 de abril de 1984 sobre relación causal por condición emocional. Mediante resolución notificada el 21 de mayo de 1984, la Comisión Industrial resolvió lo siguiente:

Examinados los autos, analizada cuidadosamente la prueba y la evidencia que consta en los mismos y vistas las disposiciones de ley y la jurisprudencia aplicables, esta Comisión ACEPTA y hace formar parte de esta resolución las conclusiones de hecho y derecho sometidas a nuestra consideración en el informe del Oficial Examinador que presidió la vista pública en este caso y el cual informe [*sic*] también SE ACEPTA y se hace formar parte de esta resolución y por consiguiente este Organismo RESUELVE lo siguiente:

Revocar la decisión del Administrador del Fondo del Seguro del Estado de fecha 29 de abril de 1983 y, en consecuencia, se ordena al Asegurador le brinde a esta obrera la íntegra protección de la Ley por su condición emocional. Apéndice, pág. 4.

Al denegar la reconsideración solicitada por el Administrador del Fondo, la Comisión Industrial señaló que no había encontrado fundamento alguno para variar su criterio sobre la relación causal entre los factores del trabajo y la agravación de la condición preexistente de la lesionada.

El Fondo plantea ante nos que la decisión de la Comisión Industrial no siguió los criterios establecidos en *Morell* v. *F.S.E.*, 110 D.P.R. 709 (1981), para determinar cuándo una condición emocional es compensable.

Concedimos término a la recurrida para mostrar causa por la cual no debamos revocar la resolución recurrida. Ha comparecido. Resolvemos que de un examen integral del caso de autos es forzoso concluir que la recurrida sufre de una incapacidad productiva agravada por su empleo y, contrario a lo que alega el Fondo, se cumplen los requisitos de *Morell* v. *F.S.E.*, supra. Veamos.

En *Morell* v. *F.S.E.*, supra, pág. 715, resolvimos que:

Para resumir, resolvemos que para que sea compensable una condición emocional bajo la Ley de Compensaciones por Accidentes del Trabajo, debe establecerse: (1) relación causal entre la condición y un accidente o enfermedad ocupacional, (2) que la condición es de tal naturaleza que origina por sí misma una incapacidad para trabajar o agrava una incapacidad funcional existente, y (3) que la prueba para demostrar tal condición sea convincente, basada en opiniones siquiátricas que sean el resultado de exámenes adecuados.

Somos conscientes de que en época reciente, y en virtud de leyes de compensaciones por accidentes del trabajo, ha habido una proliferación de reclamaciones por daños mentales a causa de condiciones emocionales surgidas en el empleo.[1] Por tratarse de situaciones en las cuales no se ha producido un daño corporal, estos casos presentan serios problemas en la constatación de la existencia, naturaleza, magnitud y relación causal de la alegada condición y el empleo.[2]

---

[1] Igual proliferación está ocurriendo en E.E. U.U. Véase S. J. Sersland, *Mental Disability Caused by Mental Stress: Standards of Proof in Workers' Compensation Cases*, 33 Drake L. Rev. 751 (1984).

[2] Un Juez del Tribunal Supremo de Oregon hizo el siguiente comentario:

"It seems that no problem in recent years has given courts and commissions administering workers' compensation more difficulty than on-the-job mental stress which results in either emotional or physical illness. The causal relationship between employment stress and a resulting mental or emotional disorder presents one of the most complex issues in workers' compensation law." (Escolios omitidos.) *McGarrah* v. *SAIF*, 675 P.2d 159, 161 (Or. 1983).

El caso de *Morell* v. *F.S.E.*, supra, págs. 713–714, señaló que los "sufrimientos mentales, tan naturales como son, no pueden compensarse bajo la ley que aquí nos ocupa a menos que, a su vez, produzcan incapacidad. Tal tipo de incapacidad debe quedar probada convincentemente, a base de prueba pericial basada en exámenes siquiátricos adecuados, dada la naturaleza vaga, nebulosa y subjetiva de dicha condición emocional y de que es susceptible de que se finjan sus síntomas".

Sin embargo, en el caso de autos, a diferencia del caso de *Morell* v. *F.S.E.*, supra, donde hubo discrepancia entre los peritos,([3]) la prueba pericial no fue controvertida. El único perito que testificó en la vista pública fue el Dr. Héctor Tejeda Sánchez, Siquiatra Consultor de la Comisión, y expresó lo siguiente:

Añadió el Dr. Héctor M. Tejeda Sánchez que al momento del examen consideró que estaban ante un caso de una Depresión Neurótica con Ansiedad. Se reservó su opinión sobre relación causal para el momento de vista pública por no tener los elementos de juicio necesario para opinar al momento de su examen. Al día de hoy después de haber oído la reclamación de la solicitante y de las dos testigos, y de haber hecho

---

([3]) El Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo, según enmendada por la Ley Núm. 63 del 10 de junio de 1974 (11 L.P.R.A. sec. 11), dispone en parte:

"Si el obrero o empleado, o sus beneficiarios, no estuvieren conformes con la decisión dictada por el Administrador del Fondo del Seguro del Estado en relación con su caso, podrán apelar ante la Comisión Industrial . . . [d]isponiéndose . . . que una vez radicada una apelación por un obrero lesionado, en que esté envuelta una cuestión médica, éste será examinado en una vista médica por médicos del Fondo del Seguro del Estado y de la Comisión Industrial conjuntamente, y por el médico que el obrero tuviere a bien traer y de la resolución que dictare la Comisión Industrial a base del informe médico que se rinda como resultado del examen practicado, la cual será firmada por un solo Comisionado, el obrero podrá solicitar la celebración de una vista pública . . . ."

Bajo la disposición antes transcrita el Fondo tiene derecho a que se dirima en vista pública, con su plena participación como parte, cualquier controversia surgida entre los médicos asesores de la Comisión y los del Fondo. *F.S.E.* v. *Comisión Industrial*, 105 D.P.R. 261, 266 (1976).

un amplio estudio del expediente, cree que estamos ante un caso de una señora en cuyo informe laboral dice: "Observaciones que estime pertinente hacer: Se observa en ocasiones muy nerviosa y en ocasiones llora. Ha estado en tratamiento médico y hoy nos entregó un certificado adjunto a esta hoja donde su médico recomienda no continuar trabajando por ahora." y está firmado por Rosa I. Cantres, Enfermera. El certificado médico en cuestión es del Dr. William Galíndez Antelo y dice: "La señora Gladys González se encuentra bajo nuestra atención siquiátrica y su condición le impide trabajar por tiempo indefinido. Debe continuar en tratamiento siquiátrico." Firmado (firma ilegible aparentemente del Dr. Galíndez) de junio 13 de 1979. El certificado es de seis días antes de la lesionada reportarse al Fondo del Seguro del Estado.

Es interesante señalar que la señora Rosa I. Cantres, Enfermera, presta una declaración jurada del 16 de octubre de 1979 y en una pregunta dice que Gladys alega tener una condición nerviosa y trajo un certificado médico donde certificaban que no podía trabajar. Visitó al Dr. Medina en Corozal[, quien] le diagnosticó Neurosis Depresiva. Ella tenía problemas personales en su casa con su esposo y se tuvo que divorciar. También tuvo problemas con su hijo por el problema del padre. Aquí nunca tuvo problemas de conducta en el trabajo. "Gladys se ponía nerviosa, temblando y llorando y dice que el ruido de las máquinas la ponían más nerviosa y nos hacía comentarios de sus problemas personales."

Si vemos [el] informe de la Trabajadora Social del Fondo del Seguro del Estado, fechado el 23 de junio de 1979, cree que está ante una lesionada que está divorciada hace cinco años, estuvo casada diez años, su esposo la abandonó. En dicha unión se procreó tres hijos cuyas edades fluctúan entre los 17 y 8 años. Todos son estudiantes. Recibe 122 dólares de cupones para la compra de alimentos y 78 dólares del seguro Social del ex-esposo de ella. Está incapacitado por mutilación de un brazo. La casa que residen es de su propiedad y pagan 52 dólares de hipoteca. Revisada la declaración jurada de la peticionaria, en la tercera página, "¿por qué razón se divorció?" "Era mi esposo incomprensible. Mi esposo trataba mal a mis hijos, los problemas que él tenía con los nenes

me afectaban a mí. Hace cinco años que nos divorciamos. Hace más de un año que se fue para Estados Unidos. Se comunicaba con mis hijos. Cuando no le enviaba nada más a mis hijos tuve que irme a trabajar. El divorcio me ha afectado poco. La mayor parte del tiempo me la pasaba en casa de mi hermana. Tengo tres hijos el más pequeño tiene 9 años, el otro quince años, está en la escuela, la otra está casada."

Es la opinión del perito que estamos ante el caso de una lesionada casada con un señor que sufre una mutilación de[l] brazo y que recibe el Seguro Social. Tiene cinco años de divorciada, el señor se comunicaba con los hijos, al verse ella con problemas económicos por el señor irse a Estados Unidos y no poder saber de él, ella empieza a trabajar, según dice en su declaración jurada. Ya tenemos una persona afectada emocionalmente, según la enfermera, que dice que en ocasiones se ponía nerviosa, llorando y temblando en el trabajo, sometida a presiones de trabajo tipo ruido, demanda de producción, problemas de si se daña la máquina, eso no debe afectar la producción, la producción sigue aunque la máquina esté dañada, para el perito [e]sto[s] son factores agravantes de una condición emocional previa que sufría la lesionada. Recomienda al Honorable Tribunal se relacione el caso por agravación.

$\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

A preguntas del Representante Legal del Asegurador contestó el Dr. Tejeda Sánchez que el diagnóstico del Dr. Cubano concurre con el de él, no hay diferencia básica de diagnóstico. Que desde el principio el cuadro ha sido de Ansiedad y Depresión, el cual ha ido evolucionando y alternándose por épocas. Que es el mismo diagnóstico, no ha habido cambios. Que el diagnóstico existe coincidiendo con la época en que la reclamante se reporta al Fondo del Seguro del Estado. Que no hay diagnóstico previo de condición emocional, o sea, que no había sido diagn[o]sticada, sí muy bien descrito por la enfermera, "Gladys se ponía nerviosa, temblando y llorando y dice que el ruido de las máquinas la ponía más nerviosa", en otras palabras, un paciente que esté nervioso, temblando y llorando, dicho siquiátricamente es una Neurosis de Ansiedad con depresión o Depresión Neurótica con Ansiedad. Que ya había sido vista por el Dr. Galíndez, quien no da diagnós-

tico específico. Que en el trabajo se agravó la condición pre-existente. Apéndice, págs. 7–8.

La opinión competente de un perito es prueba suficiente para apoyar las determinaciones de la Comisión.[4] El doctor Tejeda examinó a la lesionada y tuvo ante su consideración los informes de los doctores Galíndez y Cubano. La prueba pericial en el caso sostiene la conclusión de la Comisión Industrial de que la obrera es acreedora de que se le brinde "la íntegra protección de la Ley por su condición emocional". Se demostró que no solamente las condiciones del trabajo agravaron una condición existente, sino que además la lesionada resultó con una neurosis depresiva con ansiedad, que al presente la imposibilita reintegrarse al trabajo. Este tribunal no alterará las conclusiones de la Comisión Industrial que estén sostenidas por la prueba pericial en el caso, en ausencia de razón alguna que justifique intervenir con la apreciación hecha. *Rodríguez* v. *Comisión Industrial*, 62 D.P.R. 667, 671 (1943).

Adviértase, además, que el estatuto en cuestión responde fundamentalmente a un fin de beneficio social, avalado por un esquema legislativo que le brinda máxima protección al obrero al consagrar estatutariamente que: "Est[a] [ley] por ser de carácter remedial se interpretará liberalmente, *y cualquier duda razonable* que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, *deberá resolverse a favor del obrero o empleado, o sus beneficiarios.*" (Énfasis suplido.) 11 L.P.R.A. sec. 2.

Ante el mandato claro de la referida ley, la Comisión, en la interpretación de la misma, se guía por una actitud liberal

---

[4]"El tribunal o jurado no está obligado a decidir de conformidad con las declaraciones de cualquier número de testigos, que no llevaren a su ánimo la convicción contra un número menor u otra evidencia que le convenciere." Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 10.

de forma que se logren los propósitos que animaron al legislador. Véase *Atiles Moreu, Admor.,* v. *Comisión Industrial,* 85 D.P.R. 218, 229 (1962).

Por lo antes expuesto, se expide el auto y se confirman las resoluciones recurridas.

Así lo pronunció y manda el Tribunal y certifica el Secretario General. El Juez Asociado Señor Hernández Denton disiente mediante opinión.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Voto disidente emitido por el Juez Asociado Señor Hernández Denton.

En este caso el Fondo del Seguro del Estado recurre de la resolución de la Comisión Industrial que revocó una decisión del Administrador del Fondo. La Comisión Industrial resolvió que la condición emocional de la lesionada recurrida era compensable.

Ante nos el Fondo plantea que la decisión de la Comisión Industrial no cumple con los criterios establecidos en *Morell* v. *F.S.E.,* 110 D.P.R. 709 (1981), para determinar cuándo una condición emocional es compensable. Entiendo que el Fondo del Seguro del Estado tiene razón y procede, por lo tanto, revocar la decisión de la Comisión Industrial.

La lesionada es una operaria de fábrica que se vio obligada a trabajar porque su ex esposo, pensionado del Seguro Social, no cumplía con su obligación alimenticia con sus tres hijos. La lesionada se reportó al Fondo quejándose de que el ruido de las máquinas, así como la presión de los supervisores para que completara su tarea, la ponían nerviosa y descontrolada. El Fondo determinó que la señora González padecía de neurosis de ansiedad, pero que dicha condición no estaba relacionada con el empleo.

La obrera recurrió a la Comisión Industrial, donde se celebró la vista pertinente, y en la cual se escuchó el testimonio del perito del tribunal apelativo a nivel administrativo, el doctor Tejeda Sánchez. Del testimonio del perito citado en la sentencia de este Tribunal se desprende que la condición emocional de la obrera existía antes de ésta comenzar a trabajar en la fábrica, aparentemente, debido a los problemas surgidos con su divorcio.

En *Morell* v. *F.S.E.*, pág. 715, concluimos que para que sea compensada una condición emocional bajo la Ley de Compensaciones por Accidentes del Trabajo debe establecerse: "(1) la relación causal entre la condición y un accidente o enfermedad ocupacional, (2) que la condición es de tal naturaleza que origina por sí misma una incapacidad para trabajar o agrava una incapacidad funcional existente, (3) que la prueba para demostrar tal condición sea convincente, basada en opiniones siquiátricas que sean el resultado de exámenes adecuados."

Contrario a la sentencia de este Tribunal, entiendo que la resolución de la Comisión Industrial debe ser revocada porque descansó en testimonio pericial insuficiente. La prueba vertida para demostrar la condición emocional no fue convincente, y no estaba basada en opiniones psiquiátricas que eran el resultado de exámenes adecuados por los peritos envueltos.

El testimonio del doctor Tejeda es vago e impreciso y por ende insuficiente para establecer la relación causal que se exige en casos como el de autos. Es función ineludible tanto del Fondo del Seguro del Estado como de los Comisionados de la Comisión Industrial exigir que la prueba médica desfilada en la vista celebrada al efecto se aparte lo más posible de la especulación y de la conjetura. *Mejías Román* v. *Comisión Industrial*, 111 D.P.R. 629, 633 (1981); *Alonso García* v. *Comisión Industrial*, 103 D.P.R. 712, 715 (1975).

Este caso es típico de los muchos que se plantean ante el Fondo del Seguro del Estado y la Comisión Industrial para

solicitar la compensabilidad por un estado o condición emocional, porque el Fondo del Seguro del Estado no provee un seguro para indemnizar todos los daños. Este tipo de reclamación requiere que el lesionado pruebe que debido a ella no puede trabajar, que se originó de un accidente o enfermedad en el trabajo. Al descansar únicamente en el testimonio del perito de la Comisión, el doctor Tejeda Sánchez, la lesionada no ha probado adecuadamente su caso. Le corresponde a este Tribunal revocar una determinación con tan frágil fundamento.

Por estas razones disiento de la sentencia del Tribunal.