TEXTO COMPLETO DE LA SENTENCIA
Mediante solicitud de revisión de determinación administrativa, comparece ante nos el recurrente José Rafael Capó López, y nos solicita que i-evoquemos una resolución del Departamento de Recursos Naturales y Ambientales (en adelante el DRNA), dictada el 27 de octubre de 2004, archivada en autos y notificada a las partes el 29 de octubre siguiente. Con dicha resolución, el DRNA se pronunció no ha lugar a la impugnación del recurrente de una denegatoria de endoso por dicho departamento, a un proyecto propuesto para la construcción de un edificio con treinta unidades de vivienda en una parcela propiedad del recurrente ubicada en el Barrio *246 Sabana Llana de Río Piedras. El DRNA denegó el endoso bajo el fundamento de que dicho proyecto se encuentra dentro del área de fincas periferales al Jardín Botánico de la Universidad de Puerto Rico, las que forman parte del llamado “Bosque Estatal del Nuevo Milenio,” a ser desarrollado por el Estado en virtud de la Resolución Conjunta Núm. 192, aprobada por la Asamblea Legislativa el 20 de junio de 1998.
I
Hechos e Incidentes Procesales Pertinentes
El 20 de junio de 1998, la Asamblea Legislativa del Estado Libre Asociado de Puerto Rico aprobó, con vigencia inmediata, la Resolución Conjunta Núm. 192, “[pjara declarar la utilidad pública de las fincas que comprenden la periferia del Jardín Botánico de la Universidad de Puerto Rico en Río Piedras, dentro de la municipalidad de San Juan a fin de establecer el Bosque Estatal del Nuevo Milenio; ordenar al Departamento de Recursos Naturales y Ambientales la expropiación de dichas fincas; requerir el diseño y estructuración de un plan de acción interagencial para el desarrollo del Bosque Estatal; y asignar al Departamento de Recursos Naturales y Ambientales la suma de cuatro millones ($4,000,000) de dólares con cargo al Fondo de Mejoras Públicas para el año fiscal 1999-2000 para iniciar la implantación de las disposiciones de esta Resolución Conjunta.”
La sección 3 de dicha resolución conjunta estableció los lindes generales del área del Bosque Estatal del Nuevo Milenio en los siguientes términos: “Las fincas a ser expropiadas o adquiridas están ubicadas en Río Piedras, Municipio de San Juan, en lindes por el Norte con el Barrio Venezuela, el Sector Basilio Dávila, Sector Buen Consejo, y las urbanizaciones Monte Rey, Reparto Universitario y Park Gardens; por el Sur con tramo de la Carretera Núm. 845, Parque Industrial Víctor Fernández, y las urbanizaciones Venus Gardens y Ciudad Universitaria; por el Este con las urbanizaciones Villa Andalucía y Hill Mansions; y por el Oeste con el Jardín Botánico y terrenos de la Estación Experimental Agrícola, Universidad Metropolitana, quebrada Guaracanal, Sector El Cinco, tramo de la Carretera Núm. 176, tramo de la Carretera Núm. 838 y con tramo de la Carretera Núm. 839. ”
La sección 5 faculta al DRNA a "... identificar la titularidad de los terrenos públicos y privados que conforman los aquí propuestos para establecer el Bosque Estatal del Nuevo Milenio para facilitar la adquisición de los terrenos. Es necesario delimitar y deslindar los terrenos que formarán parte del Bosque Estatal para asegurar que se excluyan las áreas ya habitadas y con estructuras residenciales al igual que las instalaciones comunales y educativas, sean éstas públicas o privadas. Esto no impedirá que como parte del plan de desarrollo del bosque, de identificarse alguna propiedad particular que sea incompatible con esta reserva forestal, el Secretario del DRNA lleve a cabo la expropiación de éstas conforme a la ley. Las agencias gubernamentales que sean titulares de fincas localizadas en los límites geográficos que formarán el Bosque Estatal, transferirán a título gratuito al DRNA los terrenos que poseen. En el caso de las corporaciones públicas que igualmente posean fincas en los terrenos que pasen a formar parte del Bosque Estatal, dichas entidades deberán entrar en negociaciones con el Secretario del DRNA para acordar términos razonables de adquisición, uso o permuta de tierras, de forma que se viabilice el Bosque Estatal sin perjuicio de las finanzas o compromisos de dichas corporaciones públicas. ”
En agosto de 1997, el recurrente adquirió terrenos denominados “Parcela número 49” ubicada en el Barrio Sabana Llana en Río Piedras, dentro del término municipal de San Juan. El 15 de julio de 1998 presentó ante la Administración de Reglamentos y Permisos (la ARPE) una consulta basada en el Reglamento de Zonificación, para desarrollar en dicha parcela un proyecto residencial de 30 unidades.
Dentro del proceso de consulta, la ARPE requirió el endoso del DRNA, el que denegó el mismo el 7 de agosto de 1998. El DRNA basó dicha denegatoria en que la “Parcela número 49” estaba dentro de los lindes reservados por la Resolución Conjunta Núm. 192 para el desarrollo del Bosque del Nuevo Milenio. La *247 denegatoria le fue comunicada al recurrente por la ARPE el 24 de agosto de 1998, mediante una comunicación en la cual se expuso lo siguiente:

“Queremos informarle que la solicitud sometida para el caso de referencia no podrá ser considerada por esta Administración, debido a que el Departamento de Recursos Naturales mediante comunicación del 7 de agosto de 1998 señala lo siguiente:

El 20 de junio de 19998, entró en vigor la Resolución Conjunta Número 192, que declara la utilidad pública de las fincas que comprenden la periferia del Jardín Botánico de la Universidad de Puerto Rico en Río Piedras. Esta es un área de aproximadamente 400 cuerdas y constituye el último predio del área metropolitana donde puede desarrollarse un bosque urbano.

El Departamento de Recursos Naturales y Ambientales tiene la encomienda de gestionar la expropiación o adquisición de las fincas privadas localizadas en la periferia del Jardín Botánico y organizar un trámite de planificación integral para confeccionar e implantar un plan para el desarrollo del Bosque. El solar propuesto para el proyecto está localizado dentro del predio antes mencionado. Por tal razón, el Departamento de Recursos Naturales y Ambientales no endosa el desarrollo Propuesto.”

El 7 de julio de 1999, el recurrente solicitó directamente del DRNA que reevaluara su posición y accediera a la concesión del endoso requerido. Planteó que la parcela en cuestión no estaba dentro de los límites del Bosque, según establecidos en la Resolución Conjunta Núm. 192. También cuestionó la sabiduría de la Asamblea Legislativa al haber seleccionado dichos terrenos con esos propósitos, sugiriendo que dicho proyecto debía desarrollarse “en el área delfanguito en Santurce”.
El 14 de octubre de 1999, el DRNA denegó al recurrente el endoso solicitado. El 20 de octubre de 1999, el recurrente solicitó del DRNA la celebración de una vista administrativa.
Luego del trámite administrativo que estimó procedente, mediante resolución del 27 de octubre de 2004, el DRNA se sostuvo en la denegatoria del endoso solicitado. 
El 18 de noviembre siguiente, el recurrente solicitó reconsideración a dicha resolución, la cual le fue denegada en resolución notificada el 16 de diciembre de 2004.
El 30 de diciembre de 2004, el recurrente presentó el recurso de revisión que ahora nos ocupa. En resolución del pasado 8 de marzo requerimos del DRNA que se expresara en cuanto a los méritos del recurso, lo que por conducto del Procurador General hizo mediante escrito del pasado 4 de mayo.
Con el beneficio de la comparecencia de ambas partes, estamos en posición de disponer del presente recurso, lo que a continuación hacemos.
II
Cuestión Planteada
El recurrente señala que en su determinación, el DRNA incidió en los siguientes dos errores:

“Erró el DRNA al denegar el endoso al ante proyecto denominado Monterrey Vistas, por entender erróneamente que el Solar #49 ubicado en la Calle Everest de la Urb. Monterrey está dentro del proyectado Bosque Urbano, deforma ultravires (sic).

El DRNA abusó de su discreción y resolvió de manera abusiva y discriminatoria, incumpliendo el 
*248
mandato expreso del legislador, en perjuicio del peticionario y el récord en conjunto no sostiene la resolución dictada.”

Dado dichos señalamientos de errores, nos corresponde resolver si la denegatoria del endoso solicitado por el recurrente se basó en una correcta aplicación del derecho por parte del DRNA y en evidencia sustancial obrante en el expediente administrativo sometido ante nuestra consideración, examinada la totalidad de dicho expediente.
III
Conclusiones de Derecho y Análisis de la Cuestión Planteada
A
Revisión Judicial de Decisiones de las Agencias Administrativas
Reiteradamente, el Tribunal Supremo de Puerto Rico ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son éstos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. Otero v. Toyota, 163 D.P.R. _ (2005), 2005 J.T.S. 13; Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. _ (2004), 2004 J.T.S. 4; Pacheco Torres v. Estancias de Yauco, 160 D.P.R. _ (2003), 2003 J.T.S. 148; González Santiago v. Fondo del Seguro del Estado, 118 D.P.R. 11 (1986).
Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. Rebollo Vda. de Liceaga v. Yiyi Motors, supra. Los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc., 148 D.P.R. 387, 397 (1999); Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Facultad v. Consejo de Educación Superior, 133 D.P.R. 521, 532 (1993).
Como ha definido en diversas ocasiones nuestro más Alto Foro, evidencia sustancial es “aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Otero v. Toyota, supra; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131.
Debido a que las determinaciones del foro administrativo tienen que basarse en evidencia sustancial, la parte que las impugne tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial. Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra. Debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Otero v. Toyota, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.
Las determinaciones de hechos de organismos y agencias “tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas”. Otero v. Toyota, supra; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987); Facultad v. Consejo de Educación Superior, supra, pág. 532.
El tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional para explicar la decisión administrativa. Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra, pág. 134.
*249 Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa, cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación de la ley, Rebollo Vda. de Liceaga v. Yiyi Motors, supra.; Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85 (1997); y (3) cuando ha mediado una actuación irrazonable o ilegal. La cuestión es si la determinación de la agencia es razonable y no si la agencia logró la determinación correcta del hecho o los hechos. Otero v. Toyota, supra. Véase, además, Fernández Quiñones, Demetrio, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Bogotá, Colómbia, 2da. Ed., 2001, pág. 543.
B
La Resolución Conjunta Núm. 192 de la Asamblea Legislativa de Puerto Rico
La Resolución Conjunta Número 192, supra, en su exposición de motivos, establece la política pública adoptada por el Estado para el desarrollo del Bosque Estatal del Nuevo Milenio. Por lo pertinente al asunto ante nuestra consideración, citamos parte de dicha exposición de motivos:
“Es a partir del año 1993 que el Gobierno de Puerto Rico define que el manejo de los recursos naturales debe estar enmarcado dentro de una política pública de conservación en armonía con un desarrollo ecológicamente sostenible. También observamos que el pueblo puertorriqueño ha ido cobrando una mayor conciencia y preocupación por los asuntos relacionados a la protección, conservación y uso sabio de los recursos naturales. La política pública del plan de usos de terrenos formulada por nuestra administración va dirigida a cumplir con las siguientes metas:

-Dirigir el proceso de planificación hacia el logro de un desarrollo integral sostenible asegurando el uso juicioso del recurso tierra y fomentando la conservación de nuestros recursos naturales para él disfrute y beneficio de las generaciones presentes y futuras.

-Elaborar e implantar un modelo de usos de terrenos dentro de un marco de acción ecológicamente sustentable.

-Implantar programas de educación, orientación y divulgación sobre el uso del terreno que capaciten y creen conciencia a la sociedad de la utilización de instrumentos y técnicas de sustentábilidad del desarrollo del suelo que satisfagan las necesidades de nuestra generación actual y de las futuras generaciones.

-Lograr un desarrollo urbano y rural balanceado, planificando juiciosamente los usos de terrenos compatibles al entorno y a la dinámica de crecimiento demográfico en'las, comunidades, municipios y regiones del país, fomentando la accesibilidad v los beneficios del desarrollo sostenible.

-Proteger el ambiente planificando el desarrollo urbano de forma compacta en localizaciones designadas, según la intensidad de usos, proteger los terrenos, la calidad de agua y mantener estrictamente los estándares de calidad de aire, y proveer alternativas de transportación colectiva a la población.

-Identificar, proteger y conservar los terrenos de alto valor natural que forman parte del patrimonio natural de los puertorriqueños, fomentar el desarrollo de actividades que propendan al uso juicioso de dichos terrenos para el beneficio y disfrute de las generaciones presentes y futuras.

Esta política de uso de terrenos está en armonía con el precepto constitucional que dispone que será política pública del Gobierno de Puerto Rico la conservación más eficaz de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para beneficio de la humanidad.

*250
En el 1990, la población de Puerto Rico era de 3.5 millones de habitantes. Esto representa un crecimiento de 9% en comparación al 1980. La información disponible refleja que en la actualidad la densidad poblacional fluctúa aproximadamente entre unas 8,500 personas hasta 20,000 por milla cuadrada, una de las más altas en todos los Estados Unidos. El impacto ecológico ha sido notable en los sectores de alto desarrollo urbano, particularmente cuando observamos la región metropolitana de San Juan. Esta región tiene el 37% de la población total de la Isla y el 63% de los empleos están concentrados en sus principales centros. El área de San Juan constituye el principal centro de actividad económica y poblacional en nuestra Isla. Aquí radican las principales instituciones bancarias, centros comerciales, industrias y agencias gubernamentales, que provocan a diario un aumento en la población flotante y el tránsito vehicular.

En el análisis del futuro inmediato, las proyecciones indican que la población para el año 2000 será de 3.9 millones. Para el 2003, la cifra aumentará a cuatro (4) millones de personas. En este momento, las estadísticas confirman que hay 4,000 automóviles por milla cuadrada y se estima que transitan por nuestras carreteras 1.6 millones de vehículos de motor. Este cuadro evidentemente produce un grado significativo de contaminación ambiental que se agrava con la escasa cubierta vegetal del centro urbano de San Juan. El Departamento de Recursos Naturales y Ambientales ha informado que esta situación produce un grado significativo de contaminación ambiental debido a la industrialización y la escasa cubierta de áreas verdes, que entre otras funciones, contribuyen de manera significativa a absorber los contaminantes atmosféricos.
Ante esta realidad debemos diseñar soluciones efectivas y adecuadas que nos ayuden a mejorar nuestro ambiente y conservar los recursos naturales. En la medida en que valoremos y protejamos la naturaleza podemos lograr beneficios económicos y sociales que de ella se deriven. Por ello, hemos identificado un área en la periferia del Jardín Botánico en Río Piedras de aproximadamente 400 cuerdas, que constituye el último predio del área metropolitana donde puede desarrollarse un bosque urbano. El Secretario de Recursos Naturales y Ambientales ha expresado que estos terrenos contienen bosques de tipo secundario que representan zonas de amortiguamiento entre el desarrollo urbano y el jardín Botánico. Estas tincas albergan cientos de especies de faunas silvestres y se ha identificado que existen más de cien mil árboles creando un ecosistema y un balance ecológico en la zona urbana. De la información disponible se desprende que 130 cuerdas son propiedad de la Autoridad de Carreteras, 6 cuerdas fueron adquiridas recientemente por la Universidad de Puerto Rico y más de 29 cuerdas cuya titularidad la tiene la Administración de Terrenos. Las restantes cuerdas están divididas en varias fincas y el titulo de propiedad lo poseen personas naturales o jurídicas privadas. En la actualidad estas tincas se ven amenazadas ante el inminente desarrollo de provectos de construcción y usos de terrenos que pueden causar el deterioro y la destrucción del sistema natural existente.” (Subrayado nuestro).
C
Análisis
-1-
Un examen del expediente administrativo que han sometido las partes, nos permite colegir que el DRNA al acoger la solicitud del recurrente para que reevaluara su posición y accediera a la concesión del endoso requerido, tomó en cuenta las disposiciones de la sección 5.4 de la Ley Núm. 170 de 12 de agosto de 1988, Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. see. 2184. Esta sección da el derecho a toda persona a la que una agencia administrativa le deniegue “la concesión de una licencia, franquicia, permiso, endoso, autorización o gestión similar...” a impugnar dicha determinación por medio de un procedimiento adjudicativo, “según se establezca en la ley especial de que se trate y en las secciones de la 3.1 ala 3.18 de la L.P.A.U. ”, 3 L.P.R.A. see. 2151 a 2168.
La Ley Orgánica del DRNA, Ley Núm. 23 de 2 de enero de 1973, 3 L.P.R.A. secs. 151a 163, no provee un procedimiento especial para impugnar la denegatoria de un endoso solicitado. Sin embargo, en el Reglamento *251 de Procedimientos de Adjudicación y Multas Administrativas, Núm. 3746 de 6 de febrero de 1989, vigente durante el procedimiento administrativo iniciado por el recurrente ante el DRNA, aunque no hay disposiciones especiales para este tipo de impugnación, se proveen normas procesales que parecen haberlo permitido en el caso ante nuestra consideración.
Somos de opinión que esa debió ser la razón por la cual, a pesar de lo señalado por el Oficial Examinador en su informe, el DRNA decidió resolver en los méritos los planteamientos del recurrente. Sobre todo, cuando de la resolución recurrida se desprende que el DRNA interpretó los cuestionamientos del recurrente como una impugnación a las facultades del Secretario del DRNA para poner en vigor la Resolución Conjunta 192, supra. De no haber mediado en el presente caso esas circunstancias sui generis, como el hecho de que el DRNA abrió un procedimiento adjudicativo formal para atender los planteamientos del recurrente, la denegatoria de un endoso es un incidente colateral a una solicitud a la ARPE de autorización para desarrollar un proyecto de construcción, tendría que esperar por la resolución final de ésta para entonces tener acceso a la revisión judicial. 
-2-
E1 estudio y análisis del expediente administrativo sometido por las partes a este foro, como parte del recurso, nos mueve a concluir -considerando la normativa antes expuesta- que la determinación del DRNA denegando el endoso solicitado por el recurrente, se ajustó razonablemente a derecho. Veamos.
La Resolución Conjunta Núm. 192, supra, en vigor desde el 20 de junio de 1998, o sea, aproximadamente un mes antes de que el recurrente presentara ante la ARPE su Consulta Sobre Conformidad con el Reglamento de dicha agencia reguladora, radicada bajo el núm. 98-17-B-042-CPA., provee autoridad al DRNA para pasar juicio sobre el proyecto o desarrollo propuesto por el recurrente.
Como antes citado, en su exposición de motivos la resolución conjunta consigna que los terrenos destinados al desarrollo del Bosque Estatal del Nuevo Milenio se ven amenazados por “el inminente desarrollo de proyectos de construcción y usos de terrenos que pueden causar el deterioro y la destrucción del sistema natural existente”. La resolución autorizó al Secretario del DRNA a evitar la situación antes descrita.
Como bien señala el Procurador General en su escrito en representación del DRNA, el hecho de que la denominada Parcela 49 esté rodeada por áreas urbanas o desarrolladas, no puede constituir un impedimento para que el DRNA, en cumplimiento con el mandato legislativo, oportunamente incorpore esos terrenos al concepto o entorno del bosque. Sobre todo cuando en dicha parcela, según su descripción registral, no existe estructura alguna.
No hemos podido constatar, porque el recurrente así no lo ha demostrado, que la determinación del DRNA haya sido arbitraria, irrazonable o ilegal. La utilidad pública fijada al área donde ubica la parcela en cuestión es más que justificación para la negativa del DRNA a respaldar el proyecto de construcción propuesto por el recurrente.
IV
Disposición del Recurso
Por los fundamentos antes expuestos, se confirma la resolución del Departamento de Recursos Naturales y Ambientales, dictada el 27 de octubre de 2004, denegando el endoso al proyecto propuesto por el recurrente.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones