EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Accurate Solutions & Design, Inc.<br><br>Peticionaria<br><br>v.<br><br>Heritage Enviromental Services Puerto Rico, L.L.C., et al.<br><br>Recurridos | Certiorari<br><br>2015 TSPR 90<br><br>193 DPR ____ |

Número del Caso:    CC-2014-449


Fecha: 30 de junio de 2015


Tribunal de Apelaciones:

        Región Judicial de San Juan


Abogado de la Parte Peticionaria:

        Lcdo. Timothy Landers Santiago


Abogados de la Parte Recurrida:

        Lcdo. Jorge A. Rullán Marín

        Lcda. Carolina Velaz Rivero




Materia: Ley Núm. 83-2010 – Leyes sobre proyectos de energía renovable – personas autorizadas a promocionar los proyectos.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Accurate Solutions & Design, Inc.<br><br>    Peticionaria<br><br>        v.<br><br>Heritage Environmental Services Puerto Rico, L.L.C., *et al.*<br><br>    Recurridos | CC-2014-0449 | Certiorari |

Opinión emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 30 de junio de 2015.

Concierne que nos expresemos en torno al modo y las formalidades requeridas para promover los proyectos de energía renovable que han sido declarados parte de la política pública de Puerto Rico. Particularmente, debemos determinar si la promoción de estos proyectos solamente puede ser ofrecida por ingenieros licenciados. En caso afirmativo, la peticionaria no tendría derecho a la concesión del remedio solicitado. Veamos.

                                    I

Los hechos que originan la controversia ante nuestra consideración se remontan al 30 de enero de 2012. En esta fecha, Accurate Solutions & Design, Inc. (ASD o la peticionaria) le presentó a Heritage Environmental

Services, PR, LLC (HESPR) la Propuesta Núm. Q17-052 intitulada "Proposal for Commercial Grid-Tie 99.36KW Renewable Solar Array System" (propuesta), la cual fue preparada por el Ing. Edgardo Quiñones. En ella, ASD ofreció la implementación de un sistema fotovoltaico para generar y suplirle electricidad a la instalación de HESPR en Mayagüez, Puerto Rico. Para cumplir con este objetivo, en la propuesta se incluyó un análisis del impacto ambiental, económico y legal que tendría el sistema solar. Ésta fue aceptada y firmada por el Ing. Roberto Acosta Marín (ingeniero Acosta Marín) y el Sr. Ronald J. Marinelli en la primera y última página.[1]

Así las cosas, el 4 de abril de 2012 ASD y HESPR suscribieron un acuerdo intitulado *Green Energy Fund-Tier 1* con la Administración de Asuntos Energéticos de Puerto Rico (AAE). Según surge del acuerdo y lo determinado por el Tribunal de Primera Instancia, ASD compareció en calidad de agente de HESPR. En el acuerdo se concertó que la AAE otorgaría varios reembolsos de inversión para la instalación del proyecto de acuerdo a los parámetros establecidos en la Ley Núm. 83-2010, conocida como la Ley de Incentivos de Energía Verde de Puerto Rico, 13 LPRA sec. 10421, *et seq.* Ello, siempre que se hiciera conforme a los términos y condiciones del proyecto presentado ante la agencia.

---

[1]Nótese que en la propuesta solo aparece la fecha y las firmas del ingeniero Acosta Marín y del Sr. Ronald J. Marinelli. Es decir, no se especificó en qué calidad cada individuo suscribió la propuesta.

A pesar de esto, el 4 de septiembre de 2012 HESPR le remitió una misiva a ASD en la que le informó que las operaciones de sus instalaciones cambiaron y ya no estaba interesado en continuar con el Proyecto. Indicó, además, que no estaba obligado a pagar ninguna penalidad de cancelación por entender que el acuerdo suscrito era nulo *ab initio*. Ello, debido a que en la jurisdicción de Puerto Rico la práctica de la ingeniería solo puede ser llevada a cabo por ingenieros licenciados, no por corporaciones como ASD. Por último, le informó que la decisión de no continuar con el proyecto iba a ser notificada a la AAE, ya que el incentivo solicitado no iba a ser necesario.

A tenor con lo anterior, el 3 de enero de 2013 ASD acudió ante el Tribunal de Primera Instancia y presentó una demanda contra HESPR y su compañía matriz, Heritage Environmental Services, LLC (HES), por incumplimiento de contrato y daños y perjuicios. En ésta, alegó que antes de contratar, realizó un exhaustivo proceso de búsqueda, firma e intercambio de documentos para obtener los reembolsos de la AAE, además de que invirtió un sinnúmero de horas de trabajo. Por tanto, al momento en que HESPR decidió cancelar el acuerdo, ya el equipo y los materiales que ASD iba a instalar estaban en las facilidades de HESPR. Por ello, alegó que no pudo utilizarlos en otros proyectos, lo cual le generó grandes pérdidas económicas, además de que éstos se estaban deteriorando. De igual forma, reclamó daños monetarios por no recibir las

ganancias por el consumo mensual de energía que HESPR iba a obtener debido a la inversión de ASD. Asimismo, solicitó que se le restituyera la fianza que presentó ante la AAE para asegurar el cumplimiento del acuerdo. En total, reclamó la cantidad de $887,101.94 por concepto de todos los daños sufridos, más las costas, intereses y honorarios de abogado.

Por su parte, HESPR y HES (en conjunto "los recurridos") presentaron una *Moción de Desestimación*. Argumentaron que la demanda era improcedente en derecho, ya que lo reclamado no justificaba la concesión de un remedio a favor de ASD. En esencia, arguyeron que el objeto del acuerdo es ineficaz en la medida que el diseño y la instalación del proyecto por parte de ASD constituye un ejercicio ilegal de la profesión de la ingeniería. Como consecuencia, alegaron que ni la propuesta ni el acuerdo presentado ante la AAE surtieron efecto jurídico, por lo que las partidas reclamadas en la demanda eran improcedentes.

Ante estas alegaciones, ASD presentó una *Moción en Oposición a Desestimación*, en la cual sostuvo que el negocio pactado era para la venta de energía, lo cual no constituye un ejercicio de la ingeniería. En la alternativa, adujo que es acreedora de una reclamación en culpa *in contrahendo,* ya que los recurridos no profesaron la buena fe exigida en nuestro ordenamiento durante las negociaciones precontractuales.

Por otra parte, ASD también presentó una *Moción Solicitando Autorización para Enmendar Demanda y Acumular Parte Indispensable como Co-demandante.* En ésta, ASD adujo que el contrato objeto de la controversia realmente fue suscrito por HESPR, la AAE y el ingeniero Acosta Marín en su carácter personal, ya que éste es el único accionista y beneficiario de ASD. Por ello, le solicitó al tribunal que le permitiera enmendar ese hecho de la demanda original y que el ingeniero, su cónyuge y la Sociedad Legal de Gananciales compuesta por ambos, fuesen incluidos como demandantes. HESPR presentó una *Réplica a Oposición a Moción de Desestimación.*

Así las cosas, luego de varios trámites procesales, el Tribunal de Primera Instancia emitió una Sentencia, notificada el 4 de junio de 2013, en la cual declaró ha lugar la *Moción de Desestimación* presentada por los demandados y desestimó con perjuicio la demanda presentada. El Tribunal concluyó que el contrato suscrito entre ASD y HESPR constituyó una práctica ilegal de la ingeniería. Ello, debido a que en éste "se detallan todos los componentes y equipos necesarios para el diseño y la instalación del sistema de energía renovable". Sentencia del Tribunal de Primera Instancia, Apéndice del Recurso de *Certiorari*, pág. 71. (Énfasis omitido). Por tal razón, determinó que el contrato era nulo *ab initio* y, en consecuencia, ASD no tenía derecho a recibir ninguna de las partidas reclamadas en sus alegaciones.

Ante tal determinación, el 19 de junio de 2013 ASD presentó una *Moción de Reconsideración,* en la cual arguyó que el tribunal primario erró al concluir que el objeto del contrato era el ofrecimiento de servicios de ingeniería, en vez de la instalación de paneles fotovoltaicos. Asimismo, que erró al desestimar la demanda sin autorizar la enmienda solicitada por ASD y sin considerar remedios adicionales aun cuando el contrato entre las partes fuese declarado nulo. El 10 de julio de 2013 el Tribunal de Primera Instancia emitió una Orden en la cual denegó la reconsideración presentada.

A tenor con lo anterior, la peticionaria recurrió al Tribunal de Apelaciones, el cual confirmó la determinación del Tribunal de Primera Instancia. En esencia, razonó que la implantación de un sistema fotovoltaico requiere el conocimiento especializado que solamente posee un ingeniero de manera consustancial, no incidental. En consecuencia, concluyó que el contrato suscrito entre las partes era nulo *ab initio.* Asimismo, determinó que del acuerdo suscrito con la AAE se desprende que el ingeniero Acosta Marín compareció en representación de HESPR, no en su carácter personal. Siendo así, el foro apelativo resolvió que el defecto de la demanda no podía ser subsanado, ya que la actuación de ASD era improcedente en derecho. En cuanto a la doctrina de culpa *in contrahendo,* pronunció que ésta no está disponible cuando las partes suscriben un acuerdo ilegal. Posteriormente, el foro

apelativo sostuvo su razonamiento y denegó la *Moción de Reconsideración* presentada por la peticionaria.

Inconforme con este dictamen, ASD recurrió ante nos y solicitó que dejáramos sin efecto la Sentencia emitida por el Tribunal de Apelaciones. Para ello, argumentó que éste erró al interpretar el negocio entre las partes, al determinar que los proyectos de energía renovable solamente pueden ser ofrecidos por ingenieros licenciados y al confirmar la desestimación de la demanda sin la celebración de una vista. Arguyó que no hay una restricción para que solamente los ingenieros licenciados ofrezcan los servicios de sistemas de energía renovable. Razonó que si las corporaciones generales están autorizadas para recibir incentivos para este tipo de proyecto, sería contrario a la política pública avalar la determinación del foro apelativo en torno a que éstas no pueden ofrecer dichos servicios. Asimismo, adujo que, al menos, el tribunal debió haber celebrado una vista en sus méritos para poder analizar el negocio que se suscitó entre las partes.

Además, ASD reiteró que es una promotora de proyectos de energía renovable. En primer lugar, debido a que distribuye las piezas y los materiales de las placas fotovoltaicas fabricadas en Estados Unidos para posteriormente mercadearlas como una alternativa auto-sustentable. En razón de estas funciones, la peticionara alegó que debe ser reconocida como una promotora, pues

"contrató a los profesionales especializados en este campo, adquirió los materiales necesarios y gestionó todos los permisos y endosos de las agencias estatales y federales para ejecutar la obra". Recurso de *Certiorari*, pág. 13. Por su parte, los recurridos presentaron una *Oposición a Expedición de Petición de Certiorari*, en la que nuevamente alegaron que el objeto del negocio entre las partes era la práctica de la ingeniería, lo cual hacía que el contrato suscrito entre las partes fuera nulo. Del mismo modo, arguyeron que el recurso presentado no cumple con los fundamentos jurídicos necesarios para que este Tribunal ejerza su función revisora.

Así las cosas, el 12 de diciembre de 2014 emitimos una orden para que los recurridos mostraran causa por la cual no debíamos expedir el recurso. El 16 de enero de 2015 esta parte presentó un escrito intitulado *Moción Mostrando Causa en Cumplimiento de Resolución*, en el cual reproduce los argumentos presentados ante los foros recurridos y nos solicita que deneguemos el *Certiorari* presentado por ASD.

Examinados los escritos de los comparecientes, procedemos a discutir el derecho aplicable a los planteamientos señalados.

II

Como es sabido, la Regla 10.2 de las de Procedimiento Civil de Puerto Rico de 2009, 32 LPRA Ap. V, R. 10.2, permite que un demandado presente una moción de

desestimación antes de que conteste su demanda. Particularmente, el inciso (5) de esta Regla, establece que en la alegación responsiva se puede incluir como defensa el que la otra parte dejó de exponer una reclamación que justifique la concesión de un remedio. En torno a esto, reiteradamente este Tribunal ha expresado que "una demanda no debe ser desestimada por insuficiencia, a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación." Boulon v. Pérez, 70 DPR 988, 993 (1950). *Veánse*, además, Ortiz Matías *et al.* v. Mora Development, 187 DPR 649, 654 (2013); Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 429 (2008); Reyes v. Sucn. Sánchez Soto, 98 DPR 305, 309 (1970).

Por consiguiente, cuando el tribunal tiene ante su consideración una moción de desestimación de este tipo, debe tomar "como ciertos todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". Colón v. Lotería, 167 DPR 625, 649 (2006); *véase*, además, Aut. Tierras v. Moreno & Ruiz Dev. Corp., *supra,* pág. 428. Ello, debido a que lo que se ataca es un vicio intrínseco de la demanda, no los hechos aseverados. R. Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, 5ta ed., San Juan, LexisNexis, 2010, pág. 269. De esta manera, cuando los hechos están bien alegados, el

demandado tiene que demostrar "con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo de su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor." J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., JTS, T.II, 2011, págs. 528-529.

Asimismo, este Tribunal ha sido consecuente en expresar que la desestimación no procede si la demanda es susceptible de ser enmendada. Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra, pág. 429. A tales fines, la Regla 13.1 de las de Procedimiento Civil de Puerto Rico de 2009, permite que cualquier parte enmiende sus alegaciones en cualquier momento antes de haber recibido una alegación responsiva o en cualquier momento dentro de los veinte días de haber notificado su alegación si ésta no admite alegación responsiva. 32 LPRA Ap. V, R. 13.1. Para esto, el tribunal en su discreción deberá evaluar liberalmente el momento en que se presentó la solicitud de enmienda, las razones para la tardanza, el impacto para la adjudicación y el perjuicio que le causaría a la otra parte, además de los méritos de la enmienda presentada. Consejo de Titulares Cond. Plaza del Mar v. Jetter Klare, 169 DPR 642 (2006). Véanse, además, Colón Rivera v. Wyeth Pharm., 184 DPR 184 (2012); S.L.G. v. Mini-Warehouse, 179 DPR 322 (2010). En fin, como es harto conocido, en nuestro ordenamiento se considera que, solo en casos extremos, se

debe privar a un demandante de su día en corte. Cuevas Segarra, op. cit., pág. 532.

III

Debemos recordar que en el caso que nos ocupa los tribunales recurridos concluyeron que el contrato suscrito entre las partes constituía una práctica ilegal de la ingeniería. En atención a ello, reiteramos que a pesar de que todo individuo tiene derecho a ejercer cualquier profesión o negocio, no existe un derecho absoluto a las profesiones u oficios. Por esto, en razón del poder de estado y con el propósito de proteger el bienestar público, éstas pueden ser reglamentadas por el aparato gubernamental. San Miguel Lorenzana v. E.L.A., 134 DPR 405, 413 (1993). *Véase,* además, Matos v. Junta Examinadora, 165 DPR 741, 755 (2005).

De esta manera, en aras de proteger la vida, la salud, la propiedad y el bienestar público en general, la Ley Núm. 173 de 12 de agosto de 1988 (Ley Núm. 173-1988), conocida como la Ley de la Junta Examinadora de Ingenieros, Arquitectos, Agrimensores y Arquitectos Paisajistas de Puerto Rico, 20 LPRA sec. 711 *et seq.,* establece las disposiciones aplicables a la práctica de la ingeniería en Puerto Rico. Además de describir el ejercicio de la ingeniería, 20 LPRA sec. 711b, la ley también establece que el ejercicio corporativo de la práctica de la ingeniería estará permitido siempre que todos sus accionistas estén debidamente certificados y la

misma esté debidamente organizada como una corporación profesional. 20 LPRA sec. 711q-2. Así, pues, aquella persona natural o jurídica que practique la ingeniería sin cumplir con las disposiciones contenidas en la referida Ley Núm. 173-1988, podrá estar sujeto a sanciones monetarias y/o pena de reclusión. 20 LPRA sec. 711y. Para una interpretación de estas disposiciones, véanse Col. Ing. Agrim. P.R. v. A.A.A., 131 DPR 735 (1992); Rasa Eng. Corp. v. Daubón, 86 DPR 193 (1961).

IV

A.

Ahora bien, en el caso de autos, la peticionaria alegó que el contrato suscrito entre las partes no implicaba el ofrecimiento de los servicios de ingeniería, sino la promoción de un sistema de energía renovable.

Al igual que en España, la figura del promotor no está definida en nuestro Código Civil, sino que fue incorporada en nuestra jurisdicción mediante jurisprudencia.[2] Este Tribunal aludió por primera vez a esta figura en Acevedo Hernández v. C.R.U.V., 110 DPR 655 (1981). Aunque en aquella ocasión concluimos que no era necesario discutirla, expresamos que tanto en la

_____

[2]Según surge de la Sentencia del 11 de octubre de 1974 del Tribunal Supremo de España, "el término de promotor, no fue utilizado por el C. Civ. por ser desconocido en aquella fecha el carácter de constructor, con la amplitud y características del denominado actualmente promotor". S. de 11 de octubre de 1974, Núm.3798/1974, XLI (Vol. II) Repertorio de Jurisprudencia 2903. En razón de ello, en España esta figura fue adoptada y ha sido desarrollada jurisprudencialmente.

jurisdicción de España como Francia, "el promotor asume junto a muchas otras funciones la iniciativa de construir la totalidad de la obra". *Íd.*, pág. 663. Sin embargo, no fue hasta que nos expresamos en Acevedo Hernández v. Viñas Sorbá, 111 DPR 629 (1981), que finalmente se incorporó la figura del promotor en nuestro ordenamiento jurídico. Sobre el particular, hicimos las siguientes expresiones:

> Cabanillas Sánchez ha intentado recoger en unas notas recientes los requisitos que deben satisfacerse para incluir la promoción inmobiliaria en la responsabilidad decenal. Cabanillas Sánchez considera que son tres los rasgos distintivos del promotor: 1°)El promotor es un profesional de la construcción; 2°)el promotor concibe y organiza la construcción de la obra, esto es, usualmente determina lo que desea hacer, adquiere el terreno, contrata los profesionales que han de encargarse del diseño y ejecución de la obra, se ocupa de las gestiones para financiar la obra y desempeña otras funciones administrativas; y 3°) el promotor organiza la construcción para que otros la adquieran, arrienden o gocen de otro derecho real sobre la misma. *Íd.*, págs. 636-637. (Citas omitidas).

Como se puede colegir, bajo el escenario particular de hechos ante la consideración de este Tribunal, se entendió relevante el hecho de que el promotor sea un profesional de la construcción, conciba y organice la construcción de la obra, adquiera el terreno y contrate los profesionales que se encargan del diseño y la ejecución de la obra. Asimismo, que financie y realice otras funciones administrativas con el fin de que otros la adquieran, arrienden o gocen de un derecho real sobre la obra. *Véase* P.J. Cabán Vales, La responsabilidad civil por

vicios de la construcción en España y Puerto Rico, Madrid, Ed. Dykinson, 2013, pág. 97. Posterior a esta ocasión, este Tribunal no ha tenido la oportunidad de volver a expresarse sobre la figura del promotor.

B.

En armonía con las funciones que generalmente le han sido atribuidas a un promotor de proyectos según reconocidas por este Tribunal; la legislación aplicable al desarrollo de los sistemas de energía renovable permite que una persona jurídica solicite las certificaciones necesarias para poder llevar a cabo la operación de estos sistemas. Veamos.

Posterior a la promulgación de la reseñada Ley Núm. 173-1988 y su interpretación judicial, en Puerto Rico se incorporaron una serie de leyes especiales para atender el desarrollo de los proyectos de energía renovable. Particularmente, el 19 de julio de 2010 la Asamblea Legislativa de Puerto Rico adoptó la Ley Núm. 82-2010, conocida como la Ley de Política Pública de Diversificación Energética por Medio de la Energía Renovable Sostenible y Alterna, 12 LPRA sec. 8121 et seq. En atención al mandato constitucional de conservación eficaz de los recursos naturales,[3] esta ley creó una Carta de Energía Renovable con el propósito de lograr cierta independencia del uso de combustibles fósiles para el consumo de energía. Con miras a alcanzar este objetivo, a

_____

[3]Véase, Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 440.

la AAE se le atribuyó el deber y la responsabilidad de crear y ofrecer alternativas de financiamiento e incentivos especiales para aumentar la cartera de energía renovable, así como desarrollar fuentes de sustento alternas. *Véase* 12 LPRA sec. 8126.

En conformidad con la legislación descrita, la Asamblea Legislativa también aprobó la Ley Núm. 83-2010, conocida como la Ley de Incentivos de Energía Verde de Puerto Rico, 13 LPRA sec. 10421, *et seq.* El propósito de esta última consistió en la creación del Fondo de Energía Verde de Puerto Rico, el cual operaría separado de los fondos gubernamentales en aras de fomentar la generación de mercados de energía verde en la Isla. 13 LPRA secs. 10422-10423. Según se desprende de esta legislación, las personas jurídicas[4] que lleven a cabo actividades elegibles[5] podrán beneficiarse de los incentivos que provee la referida ley. *Véase,* por ejemplo, 13 LPRA sec. 10430.[6]

---

[4]Nótese que la Ley Núm. 83-2010, define el término persona como "cualquier individuo, sociedad, empresa, asociación, corporación, corporación pública o entidad". 13 LPRA sec. 10421(35).

[5]Según definido en la Ley Núm. 83-2010, una actividad elegible significa:

(a) Cualquier negocio que se dedique a la producción de venta de energía verde a escala comercial para consumo en Puerto Rico, sea como dueño y operador directo de la unidad de producción o como dueño de una unidad de producción que esté siendo operada por otra persona, en cuyo caso, tanto dueño como operador se considerarán negocios dedicados a una actividad elegible para los fines de este capítulo;

Además de que de la legislación descrita no se desprende ninguna restricción para que las personas jurídicas puedan solicitar los incentivos divulgados por la ley, en el 2008 la AAE promulgó un Reglamento para la certificación de sistemas fotovoltaicos e instaladores. Reglamento para la certificación de sistemas fotovoltaicos e instaladores, Reglamento Núm. 7599, Departamento de Estado, 29 de octubre de 2008. Éste establece las normas pertinentes a la certificación de equipos fotovoltaicos, el proceso para que los instaladores puedan registrarse y certificarse ante la AAE, entre otros asuntos. Según surge de la sección de aplicabilidad, éste abarca tanto a las personas naturales que instalen o diseñen los sistemas fotovoltaicos como a las personas jurídicas que los vendan, manufacturen o instalen. *Íd.*, pág. 6. En razón de ello, el *solicitante* está definido de la siguiente manera:

---

(b) productor de energía verde, según definido en esta sección, para consumo en Puerto Rico, siempre que éste sea su negocio principal;

(c) ensamblaje de equipo para generación de energía verde, incluyendo la instalación de dicho equipo en las facilidades del usuario de energía verde a ser generada por dicho equipo. 13 LPRA sec. 10421(1).

[6]La Sec. 5.32 del reglamento creado en virtud de la Ley Núm. 83-2010, conocida como la Ley de Incentivos de Energía Verde de Puerto Rico, 13 LPRA sec. 10421, *et seq.,* diáfanamente establece que el solicitante "será la persona o entidad responsable de completar y someter una solicitud a cualquier programa del FEV y que servirá como el contacto principal con la AAE a través del proceso de solicitud y construcción. Toda comunicación relacionada a un PEV será dirigida al Solicitante. Un Solicitante puede ser también el cliente". Reglamento del fondo de energía verde enmendado y replanteado, Reglamento Núm. 8410, Departamento de Estado, 3 de diciembre de 2013, pág. 15.

Persona natural que solicita la certificación de instalador de sistemas fotovoltaicos. En el caso de certificación de equipos fotovoltaicos significa la persona natural o jurídica que solicita la certificación del mencionado equipo. En el caso de certificación de diseño de sistema fotovoltaico significa la persona natural o **jurídica** que solicita la certificación de diseño. *Íd.*, pág. 9. (Énfasis suplido).

Como consecuencia, por virtud de este reglamento se estableció que no se podrá instalar ningún equipo fotovoltaico sin obtener la correspondiente certificación de la AAE. Además, "[l]os instaladores tendrán que instalar de acuerdo al diseño hecho por el Ingeniero licenciado que aparece en la certificación del Sistema y la certificación emitida deberá ser firmada por el instalador a tales efectos". *Íd.*, pág. 12.[7]

Cónsono con estas disposiciones, también se promulgó el Reglamento para la certificación de sistemas de energía renovable, cuyo objetivo, entre otros, es certificar las personas naturales o jurídicas que llevan a cabo la

_____

[7] Véase, además, el Art. 29 sobre Multa administrativa por Instalación sin Certificado de Instalación, en el cual diáfanamente se reconoce que una persona jurídica puede ordenar la instalación de un sistema fotovoltaico. Particularmente, dispone que "[t]oda persona jurídica que ordene la instalación de un equipo fotovoltaico a un instalador sin la certificación de instalador otorgada por la AAE según requerida por este reglamento podrá ser multada por la cantidad mínima de cien ($100) dólares y hasta de mil ($1,000) dólares por instalación. Reglamento para la certificación de sistemas fotovoltaicos e instaladores, Reglamento Núm. 7599, Departamento de Estado, 29 de octubre de 2008, pág. 18. Asimismo, permite la imposición de multas administrativas a una persona jurídica que instale un sistema que no concuerde con lo instalado o que el diseño no concuerde con las condiciones del lugar, entre otras penalidades aplicables. *Íd.,* pág. 19.

instalación de sistemas fotovoltaicos y facilitar la obtención de créditos contributivos. Reglamento para la certificación de sistemas de energía renovable, Reglamento Núm. 7796, Departamento de Estado, 19 de enero de 2010.[8] A tales efectos, el reglamento es de aplicación a las "[p]ersonas naturales que diseñen y/o instalen sistemas de energía renovable y personas jurídicas mediante las cuales se contraten estos servicios". *Íd.*, pág. 2. Según dispuesto en el referido reglamento, el solicitante[9] deberá presentar una certificación ante la AAE, en la cual incluya la descripción del sistema fotovoltaico, la firma del instalador y del diseñador, además de la factura del costo del sistema.

De esta manera, el reglamento permite que una persona jurídica solicite la certificación de los instaladores del sistema de energía renovable. En el caso de los instaladores, el solicitante deberá demostrar que el instalador cumple con los requisitos contenidos en el Art. 14 del referido reglamento. Reglamento para la

---

[8]Este reglamento fue enmendado mediante la Enmienda al reglamento para la certificación de sistemas de energía renovable, Reglamento Núm. 7796 de 19 de enero de 2010, Reglamento Núm. 8080, Departamento de Estado, 30 de septiembre de 2011.

[9]De manera similar al Reglamento Núm. 7599, este reglamento describe al solicitante como toda "[p]ersona natural que solicita la certificación del Instalador. En el caso de la solicitud de una certificación de equipo o instalación, significa la persona natural o jurídica que solicita la certificación". Reglamento para la certificación de sistemas de energía renovable, Reglamento Núm. 7796, Departamento de Estado, 19 de enero de 2010, pág. 8.

certificación de sistemas de energía renovable, *supra*, págs. 8-11.[10] Es decir, deberá ser un perito o ingeniero electricista que cumpla con unas credenciales profesionales y educativas particulares. De no cumplirse con las disposiciones descritas, los Arts. 32 y 34 del referido reglamento permiten la imposición de multas administrativas por instalar un sistema fotovoltaico sin el certificado de un instalador,[11] porque éste no concuerde con el diseño o sea inadecuado o porque no se le entregó copia del plano al cliente previo a la instalación del sistema de energía renovable. *Íd.*, págs. 21-22.

Según se desprende de lo anterior, la legislación y reglamentación aplicable al negocio que se suscitó entre las partes permite que una persona jurídica lleve a cabo todas las gestiones necesarias para que se obtengan las certificaciones requeridas para el desarrollo de un

---

[10]El Art. 15 sobre el Procedimiento ante la Administración para la obtención de Certificación de Instalador, establece que "[e]l solicitante llenará la Solicitud de Certificación y le anejará toda la evidencia requerida por el Artículo 14". Reglamento para la certificación de sistemas de energía renovable, *supra*, pág. 11.

[11]El Art. 32(2) establece que "[t]oda persona jurídica o natural que ordene la instalación de un equipo fotovoltaico o de un equipo eólico a un instalador sin la Certificación de Instalador otorgada por la Administración, según requerida por este Reglamento, podrá ser multada por la cantidad mínima de mil dólares ($1,000) y hasta un máximo de cinco mil dólares ($5,000) por instalación". Reglamento para la certificación de sistemas de energía renovable, *supra*, pág. 21.

sistema de energía renovable.[12] Claro está, el solicitante de esas certificaciones y procesos deberá observar que en las fases en las que se requiere un perito o ingeniero electricista se utilicen los recursos profesionales que cumplan con las credenciales exigidas por las normas aquí discutidas.

V

A tenor con el marco jurídico que hemos enunciado, procedemos a resolver la controversia de autos.

Según surge de los hechos, ASD le presentó a HESPR una propuesta para la implantación de un sistema de energía renovable, el cual "will save approximately 212,850 pounds (106 tons) of annual CO2 emissions per year". *Proposal for Commercial Grid-Tie 99.36KW Renewable Solar Array System,* Apéndice del Recurso de *Certiorari*, pág. 157. Para esto, luego de exponer cómo el proyecto iba a contrarrestar problemas ambientales de preeminencia,

---

[12]Es pertinente destacar que la Ley Núm. 19-2012, conocida como la Ley de Contratos de Rendimiento Energético, 3 LPRA sec. 8961 *et seq.*, fue promulgada con el objetivo de emular a varias jurisdicciones de los Estados Unidos y autorizar los Contratos de Rendimiento Energético en el sector público. En aras de promover la conservación energética, esta ley promueve contratos entre las agencias gubernamentales y un Proveedor de Servicios Energéticos Cualificado. Según establece la legislación, estos últimos pueden ser "[u]na persona o entidad jurídica con conocimiento especializado y experiencia en el diseño, la implantación e instalación de medidas de conservación energética. . . que cumpla con los requisitos de cualificación establecidos por la Administración". 3 LPRA sec. 8961(12). De esta manera, se autoriza este tipo de contratación por parte de personas jurídicas. En el caso particular de los servicios de ingeniería, la legislación establece que éstos serán utilizados para la ejecución efectiva de los contratos, sin limitación adicional. 3 LPRA sec. 8968.

tales como la polución del aire y el calentamiento global, se incluyó un análisis económico del consumo de energía que HESPR se ahorraría al instalar el sistema. De igual forma, ASD incluyó un análisis de los incentivos que podían ser solicitados bajo la mencionada Ley Núm.83-2010 para que el desarrollo de proyectos como el propuesto fueran rentables. Además, se incorporó un análisis de cuánto sería la inversión final en comparación con la cantidad anual que HESPR se ahorraría de instalar el proyecto. En el desglose de inversión se incluyeron las partidas de gastos por concepto de los módulos solares, los paneles de soporte, el monitoreo del equipo y los materiales, la instalación y los diseños y permisos. Por último, se incluyó una lista de las certificaciones y formularios que se iban a gestionar ante la AAE y la Autoridad de Energía Eléctrica para poder llevar a cabo el proyecto.[13]

De otra parte, en el acuerdo presentado ante la AAE para el financiamiento del proyecto, las partes expusieron

---

[13] En esta sección, la cual estaba intitulada como "Deliverables", específicamente se dispuso que ante la AEE se gestionarían las siguientes certificaciones: *Installer Certification, Inverter Certification, PV Module Certification, Installation Certification.* En el caso de la Autoridad de Energía Eléctrica, la propuesta incluyó lo siguiente: "*Interconnection Request Evaluation Form, System Drawings & Protection/Coordination Schematics, Any diligence for Interconnection Permit Approval, System test and any applicable test required by PREPA*". Por último, en ésta se desglosó que se gestionarían los: "*PV Modules and Racks, Certified Electrical & Structural Designs, System Installation, System Commissioning & Training*". *Proposal for Commercial Grid-Tie 99.36KW Renewable Solar Array System*, Apéndice del Recurso de *Certiorari*, pág. 160.

que eran las responsables de la selección del diseñador, manufacturero, contratista e instalador del Proyecto. Es decir, en este acuerdo se representó que ASD sería la encargada de la construcción y operación del Proyecto como agente de HESPR. *Green Energy Fund Reservation Agreement*, Apéndice del Recurso de *Certiorari*, págs. 161-179.

A pesar de estas especificidades contractuales, los tribunales recurridos desestimaron con perjuicio la demanda presentada por ASD porque concluyeron que la peticionaria estaba ofreciendo servicios de ingeniería en contravención con la Ley Núm. 173-1988, lo que hacía el contrato *nulo ab initio.* No actuaron conforme a derecho. Veamos.

La disposición estatutaria en la que los tribunales recurridos basan su determinación no contempla la posterior legislación y reglamentación en torno a la difusión de los contratos de energía renovable como una política pública de gran transcendencia en nuestro ordenamiento. Según reseñado, las leyes y los reglamentos aplicables a estos negocios permiten que una persona jurídica solicite las certificaciones administrativas requeridas para instalar un sistema fotovoltaico.

En particular, la Ley Núm. 83-2010, permite que una persona jurídica actúe como solicitante de cualquier programa del Fondo de Energía Verde durante el proceso de solicitud y construcción de un sistema de energía renovable. Según definido en la ley, el solicitante deberá

ser aquel que lleve a cabo actividades elegibles, entre las que se encuentra el ensamblaje del equipo para la generación de energía. Cónsono con esto, el Reglamento para la certificación de sistemas fotovoltaicos e instaladores, *supra*, diáfanamente establece que las personas jurídicas pueden solicitar las certificaciones de diseño para la instalación de los sistemas fotovoltaicos. De igual forma, el Reglamento para la certificación de sistemas de energía renovable, *supra*, autoriza que una persona jurídica contrate los servicios para el diseño y la instalación de estos sistemas. Tanto es así que ambos reglamentos contemplan la imposición de multas a las personas jurídicas que incumplen con las disposiciones reglamentarias aplicables. Es decir, autorizan la imposición de responsabilidad a aquella persona jurídica que le ordene a un instalador que no ha sido certificado por la AAE la instalación de un sistema fotovoltaico, diseñe un sistema fotovoltaico que no concuerde con las condiciones del lugar a ser instalado o incumpla cualquier otra disposición reglamentaria.

Nótese que esta reglamentación contempla el que una persona jurídica se encargue de la coordinación de todo el proceso de diseño e instalación de un sistema fotovoltaico. Ciertamente, para obtener las certificaciones requeridas, el solicitante deberá acreditar que la persona contratada para instalar cumple con las especificaciones reglamentarias aplicables, tal

como ser perito electricista o ingeniero electricista. En el caso de los diseñadores se requiere que sean ingenieros profesionales. *Véanse* Art. 14 y 26 del Reglamento para la certificación de sistemas de energía renovable, *supra*.

Como vemos, el estatuto y los reglamentos aplicables no restringen la solicitud de estos servicios a profesionales licenciados, sino que permiten que éstos sean solicitados por una persona jurídica siempre y cuando la persona natural designada como instalador o diseñador cumpla con unos requisitos profesionales específicos. De ninguna manera el legislador pretendió imponer un oligopolio en el que los electricistas e ingenieros sean los únicos promotores de este tipo de proyectos, sino que exigió que toda persona natural o jurídica contrate los servicios de estos profesionales para la instalación del sistema fotovoltaico, a fin de que no se ejerza ilegalmente el ejercicio de esas profesiones. Por tanto, a la luz de estas disposiciones, en esta etapa no podemos concluir que el contrato suscrito entre ASD y HESPR era nulo *ab initio*.

Ello, porque según hemos expuesto, en armonía con las legislaciones aplicables, una persona jurídica en calidad de promotora puede realizar las funciones propias de los servicios contenidos en la propuesta de ASD. En el caso de autos, de la propuesta presentada por ASD y aquilatada por los foros recurridos, surge que éstos iban a coordinar el diseño y la instalación del sistema fotovoltaico. La

presentación de los servicios pactados incluía la coordinación de diversas funciones, entras las cuales se destaca el ensamblaje, la búsqueda y obtención de certificaciones gubernamentales e incentivos y la instalación del sistema. Algunas de estas fases conllevan contratar los profesionales para que realicen las actividades propias de la industria energética. No nos persuade el argumento de los tribunales recurridos en cuanto a que como en el presupuesto se incluyó un renglón de "designs and permits", esto implica que ASD ofreció ejercer un servicio de ingeniería. El solo hecho de presupuestarlo no puede llevarnos a esa conclusión. Por el contrario, esto estaba englobado con el cálculo de actividades requeridas para la consecución última de la propuesta: un sistema de energía fotovoltaica.

Por otra parte, y en consonancia con las funciones pactadas, en la propuesta se identificaron como "deliverables" las certificaciones requeridas por ley para poder llevar a cabo estos trabajos. Asimismo, ASD se comprometió a ser el contacto con las agencias gubernamentales que financiarían el proyecto. De hecho, ya se habían realizado gestiones ante la AAE para la obtención del incentivo. *Véase Green Energy Fund REservation Agreement Tier 1*, Apéndice del Recurso de *Cetiorari*, págs. 161-179. Ello, porque como bien señala la propuesta y la legislación descrita, la rentabilidad de estos proyectos depende del financiamiento otorgado por

las agencias pertinentes. Ante este cuadro, no procedía concluir que el contrato suscrito era nulo *ab initio.*

No obstante, huérfanos del análisis que antecede, los tribunales recurridos apoyaron su conclusión en que como ASD no era una corporación profesional y alegadamente ofreció realizar directamente servicios de ingeniería, el contrato era nulo *ab initio* en virtud de la Ley Núm. 173-1988. No nos persuade ante las normas de derecho aplicables. Aún bajo el razonamiento de los foros recurridos, se obviaría el texto expreso del Art. 3.2 de la Ley Núm. 83-2010, 13 LPRA sec. 10444, el cual establece que en caso de conflictos entre esta legislación y una posterior o anterior, prevalecerán las disposiciones de la primera.[14] De esta manera, en la medida que los

---

[14]El referido Art. 3.2 de la Ley Núm. 83-2010, establece como sigue:

Ninguna persona, incluyendo, pero sin limitarse a, toda agencia o corporación gubernamental local o municipal, podrá emitir o imponer, sea mediante reglamento, acuerdo, contrato, resolución u orden, requisito de endoso, permiso o gestión similar, zonificación, calificación, ordenanza o cualquier otro mecanismo legal o discrecional, cualquier requerimiento, impedimento o condición alguna que tenga o pueda tener el efecto de frustrar los requisitos, objetivos y espíritu de este capítulo. Tales requerimientos, impedimentos o condiciones se entenderán nulos de su faz a menos que estén expresa y justificadamente dirigidos a proteger la salud y seguridad humana y posean el aval del Comité Evaluador, o estén expresamente autorizados por este capítulo o una legislación posterior a ésta.

En la eventualidad que surja algún conflicto entre las disposiciones de este capítulo y las de cualquiera otra ley o reglamento, sean éstas aprobadas con anterioridad o posterioridad a este capítulo, las disposiciones de este capítulo prevalecerán con relación a

requerimientos de la Ley Núm. 173-1988 entren en contravención con la Ley Núm. 83-2010, esta última prevalece. No obstante, reiteramos que la discutida Ley Núm. 83-2010 y los reglamentos aplicables, permiten que una persona jurídica, sin incluir alguna especificidad en cuanto a su incorporación, solicite las certificaciones de diseño e instalación requeridas para los sistemas de energía renovable, lo cual no está prohibido por la Ley Núm. 173-1988. Ello es así debido a que, ciertamente, esto no atenta contra la salud o seguridad humana en la medida que para poder llevarse a cabo estos proyectos, los mismos deben ser certificados por los profesionales pertinentes. Por lo tanto, reconocemos que en calidad de promotora una persona jurídica puede contratar estos servicios y encargarse de hacer las gestiones pertinentes ante las agencias administrativas como parte de las múltiples funciones necesarias para llevar a cabo la operación de un sistema de energía fotovoltaico.

A tenor con estas determinaciones, procede concluir que no hay una restricción para que solamente los ingenieros licenciados o los peritos electricistas puedan actuar en calidad de promotores de los proyectos de energía renovable. En razón de ello, no procedía el análisis de los tribunales recurridos en cuanto a que porque en la propuesta se "detallan todos los componentes y equipos necesarios para el diseño y la instalación del

---

todos los asuntos tratados en las mismas. 13 LPRA sec. 10444.

sistema de energía renovable", Sentencia del Tribunal de Apelaciones, Apéndice del Recurso de *Certiorari*, pág. 71, el contrato era *nulo ab initio.* Procedía, sin embargo, analizar los estatutos y reglamentos pertinentes, además de la capacidad en la que ASD estaba ofreciendo estos servicios. Es decir, atender su reclamo de ser promotora del proyecto en cuestión.

Ante este análisis, nos es forzoso concluir que al interpretar liberalmente los hechos bien alegados por la peticionaria, no procedía desestimar la demanda con perjuicio bajo el fundamento que de las alegaciones no se justificaba la concesión de un remedio. Esto cobra mayor relevancia cuando consideramos que la peticionaria alegó que el ingeniero Acosta Marín compareció al acuerdo ante la AAE como representante de los recurridos, y solicitó enmendar la demanda a tales fines. Sin lugar a dudas, en este caso, el recurrido no demostró que el demandante no tenía derecho a remedio alguno bajo cualquier estado de derecho. Procedía, por lo tanto, denegar la moción de desestimación presentada y continuar con los procedimientos.

VI

Por los fundamentos expuestos, expedimos el recurso de *Certiorari* y revocamos la determinación del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo con lo aquí dispuesto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo.


                              Luis F. Estrella Martínez
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Accurate Solutions & Design, Inc.<br><br>    Peticionaria<br><br>            v.<br><br>Heritage Environmental Services Puerto Rico, L.L.C., *et al.*<br><br>    Recurridos | CC-2014-0449 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2015.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se expide el recurso de *Certiorari* y se revoca la determinación del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo con lo aquí dispuesto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez concurren con el resultado sin opinión escrita.


                              Aida Ileana Oquendo Graulau
                         Secretaria del Tribunal Supremo