ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| RAFAEL VÉLEZ DE LEÓN,<br><br>THE BATTERY RECYCLING CO., INC. (Patrono),<br><br>Recurrente,<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO,<br><br>Recurrida. | TA2025RA00275 | REVISIÓN procedente de la Comisión Industrial de Puerto Rico.<br><br>Caso C.I.: 10-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-01 24-086-A.<br><br>Caso C.F.S.E.: 10-07-00767-8.<br><br>Sobre: tratamiento y mayor incapacidad, condición emocional. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 15 de enero de 2026.

Comparece la parte recurrente, Rafael Vélez De León (señor Vélez), y nos solicita que revisemos la *Resolución* emitida por la Comisión Industrial de Puerto Rico (CIPR) el 16 de junio de 2025, notificada el 7 de agosto de 2025. Mediante el referido dictamen, la CIPR le denegó la concesión de los **beneficios por incapacidad total y permanente por condición emocional** al amparo de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1, *et seq*., intitulada *Ley del Sistema de Compensaciones por Accidentes del Trabajo* (Ley Núm. 45).

Evaluado el recurso, la oposición al mismo y la transcripción de la prueba oral (TPO), a la luz del derecho aplicable, confirmamos la *Resolución* recurrida.

I

Los hechos que generan la controversia que nos ocupa se remontan al 22 de septiembre de 2009, cuando el señor Vélez sufrió una caída mientras trabajaba para *The Battery Recycling Co*., su patrono para dicha fecha. A causa del referido accidente, el recurrente sufrió lesiones en su

cuello, espalda y cintura, así como en su pierna y rodilla derechas[1]. A raíz de ello, inició un proceso de reclamación ante la parte recurrida, la Corporación del Fondo del Seguro del Estado (CFSE).

Posteriormente, y tras varios años de trámites administrativos ante la CFSE y la CIPR, el foro recurrido notificó una *Resolución* a través de la cual, entre otras cosas, determinó la existencia de un nexo causal entre la condición emocional ocupacional reclamada por el señor Vélez y su trabajo[2]. En virtud de dicha determinación, el 8 de noviembre de 2018, la CFSE reconoció la condición emocional del lesionado recurrente como secundaria y relacionada, por lo cual notificó su decisión de continuar brindándole tratamiento médico mientras este continuaba trabajando[3].

Posteriormente, el señor Vélez instó varios recursos apelativos ante la CIPR, en los cuales sostenía que se encontraba inhabilitado para trabajar mientras recibía tratamiento, según había determinado la CFSE, por lo que reiteró su solicitud de que se pautara una vista administrativa a tales efectos[4].

El 8 de agosto de 2019, la CIPR notificó una *Resolución*, mediante la cual revocó la decisión de la CFSE de brindarle tratamiento al señor Vélez para su condición emocional mientras trabajaba[5]. Además, refirió al lesionado recurrente al psiquiatra consultor de la CIPR, quien lo evaluaría y haría recomendaciones sobre el tratamiento y mayor porciento de incapacidad por condición emocional, conforme reclamados. Por último, ordenó la celebración de una vista pública, una vez se recibiera el informe del psiquiatra consultor.

El 31 de octubre de 2019, el Dr. Luis A. Feliciano, psiquiatra consultor de la CIPR para ese entonces, emitió un informe a tenor con el referido del foro recurrido. En el mismo, recomendó que se otorgara un diez

---

[1] *Véase*, apéndice del recurso, entrada núm. 1, SUMAC TA.

[2] *Íd.*, entrada núm. 14.

[3] *Íd.*, entrada núm. 15, pág. 2.

[4] *Íd.*, entrada núm. 15 a la 18.

[5] *Íd.*, entrada núm. 19.

por ciento (10%) de mayor incapacidad por condición emocional al señor Vélez, basado en su historial y el examen mental que le fue realizado[6].

Consecuentemente, el 9 de febrero de 2021, la CIPR ordenó el aumento de la incapacidad del lesionado recurrente a la pérdida de un diez por ciento (10%) de sus funciones fisiológicas generales por su condición emocional[7]. No obstante, el 4 de marzo de 2021, el señor Vélez apeló dicha determinación, por entender, que sus condiciones requerían un mayor porciento de incapacidad y una mayor compensación[8]. Por ello, volvió a solicitar otra vista pública para dirimir tales asuntos.

En virtud de esta última apelación, la CIPR nuevamente refirió al recurrente para que fuese evaluado por su psiquiatra consultor, el Dr. Juan G. Batista Reyes (doctor Batista Reyes). El doctor Batista Reyes evaluó al señor Vélez el 15 de abril de 2024, fecha en que también rindió su informe sobre evaluación psiquiátrica[9]. De este informe surge que, a base de su evaluación, el doctor recomendó que se mantuviese el diez por ciento (10%) de incapacidad por condición emocional.

El 21 noviembre de 2024, se celebró la vista pública para dirimir los reclamos del señor Vélez, la cual se llevó a cabo ante un oficial examinador designado por la CIPR[10]. Este último rindió su informe el 13 de diciembre de 2024, en el que plasmó una relación detallada de lo acontecido en dicha vista, junto a una recomendación para que las partes sometieran sus respectivos memorandos con las propuestas de determinaciones de hechos y conclusiones de derecho; ello, en un término de cuarenta y cinco (45) días[11].

El 30 de enero de 2025, la CIPR notificó una *Resolución* mediante la cual acogió la recomendación contenida en el informe final del oficial

---

[6] Véase, apéndice del recurso, entrada núm. 20, SUMAC TA.

[7] *Íd.*, entrada núm. 23, pág. 2.

[8] *Íd.*, entrada núm. 23, pág. 1.

[9] *Íd.*, entrada núm. 24.

[10] *Íd.*, entrada núm. 25, pág. 3.

[11] *Íd.*, entrada núm. 25, pág. 16.

examinador, el cual hizo formar parte de dicha determinación[12]. En la misma, apercibió a las partes que, transcurrido el término concedido, procedería a emitir una resolución para adjudicar la controversia. El 17 de marzo de 2025, el señor Vélez presentó su correspondiente memorando de derecho[13], mas no surge que la CFSE cumpliera con lo ordenado por la CIPR.

Sometido el asunto para su adjudicación, el 16 de junio de 2025, notificada el 7 de agosto de 2025, la CIPR emitió la resolución final objeto de revisión en el presente recurso[14]. En el referido dictamen, el foro recurrido determinó que no procedía la concesión de los beneficios por incapacidad total y permanente por condición emocional, según solicitado por el señor Vélez, por lo que ratificó el diez por ciento (10%) de incapacidad que le fuera previamente otorgado al lesionado recurrente. Por consiguiente, ordenó el cierre y archivo del recurso apelativo incoado por este último.

En desacuerdo, el 27 de agosto de 2025, el lesionado recurrente presentó una moción de reconsideración ante la CIPR[15]. Luego de expirado el término reglamentario para que el foro recurrido considerara la solicitud de reconsideración, el 8 de octubre de 2025, el señor Vélez instó este recurso y señaló la comisión de los siguientes errores:

> Erró la H.C.I. al notificar la resolución aquí recurrida, contrario al Debido Proceso de Ley, esto es, sin el informe del Oficial Examinador Edgardo López Carrasquillo, funcionario que presidió la vista, para la consideración de la Agencia, requisito establecido mediante la Ley 38 del 2017, mejor conocida por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico y el Reglamento #9464 de la H.C.I.
>
> Erró la H.C.I. al determinar que no procedía otorgar a la parte recurrente una incapacidad total y permanente por condición emocional a tenor con el testimonio pericial, cuando el testimonio pericial fundamenta otorgar los beneficios de la incapacidad total y permanente a la parte recurrente.
>
> Erró la H.C.I. al rechazar la recomendación del perito psiquiatra consultor, aún cuando el mismo fue claro,

---

[12] *Véase*, apéndice del recurso, entrada núm. 25, pág. 1, SUMAC TA.

[13] *Íd.*, entrada núm. 27.

[14] *Íd.*, entrada núm. 2

[15] *Íd.*, entrada núm. 28.

contundente y el mismo no fue impugnado por la parte recurrida.

Erró la H.C.I. al denegarle a la parte recurrente los beneficios de la Incapacidad Total y Permanente por condición emocional[16].

Conforme le fuera ordenado mediante nuestra *Resolución* del 8 de octubre de 2025, el señor Vélez presentó la transcripción de la prueba oral debidamente estipulada el 5 de noviembre de 2025. Posteriormente, el 21 de noviembre de 2025, el recurrente presentó su alegato suplementario. Por su parte, el 17 de diciembre de 2025, la CFSE presentó su alegato en oposición.

Con el beneficio de la comparecencia de ambas partes, resolvemos.

II

A

La norma reiterada es a los efectos de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron

---

[16] H.C.I. se refiere a las siglas elegidas por el recurrente para aludir a la CIPR.

correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Vázquez, et al. v. DACo*, opinión de 21 de mayo de 2025, 2025 TSPR 56, a la pág. 28, 215 DPR ___; *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR, a la pág. 941. Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1, *et seq*., conocida como *Ley del Sistema de Compensaciones por Accidentes del Trabajo* (Ley Núm. 45), es catalogada como un estatuto de naturaleza remedial, cuya finalidad es que se le proporcione al obrero ciertas garantías y beneficios en el contexto de enfermedades o accidentes en el entorno de trabajo. *Hernández Morales et al. v. C.F.S.E.*, 183 DPR 232, 239-240 (2011). Para ello, instaura un "sistema de seguro compulsorio y exclusivo para compensar a los obreros que sufran lesiones o enfermedades en el curso del empleo, brindándoles un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños". *Íd*., a la pág. 240.

Entre los remedios que concede la Ley Núm. 45 se encuentran la asistencia médica y la compensación, ya sea esta última por incapacidad transitoria o permanente, e incluso por muerte. *Íd*.; 11 LPRA sec. 3. Para que un obrero pueda recibir una compensación por incapacidad al amparo de esta Ley, es requisito que el obrero sufra lesiones originadas por algún acto o función inherente a su trabajo o empleo, que ocurran en el curso de este, y como consecuencia del mismo, o por enfermedades o muerte derivadas de su ocupación. 11 LPRA sec. 2; *Hernández Morales et al. v. C.F.S.E.*, 183 DPR, a la pág. 240; *Cátala v. F.S.E.*, 148 DPR 94, 100 (1999). Cónsono con lo anterior, un accidente ocupacional solo es compensable si, además de reunir las circunstancias antes mencionadas, la lesión resultante incapacita al obrero para continuar trabajando. *Íd.*

En lo pertinente a la controversia que nos ocupa, un obrero lesionado podría tener derecho a recibir una compensación periódica cuando su caso sea resuelto como uno de incapacidad total permanente, resultante de una enfermedad o lesión ocupacional compensable. 11 LPRA sec. 3(d). Para efectos del precitado estatuto, se considera como una incapacidad total:

> [L]a pérdida total y permanente de la visión industrial de ambos ojos, la pérdida de ambos pies por el tobillo o más

> arriba; la pérdida de ambas manos por la muñeca o más arriba; la pérdida de una mano o un pie; **perturbaciones mentales totales que sean incurables, y las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado, para hacer toda clase de trabajo u ocupaciones remunerativas**.
>
> .     .     .     .     .     .     .     .     .

11 LPRA sec. 3(d). (Énfasis nuestro).

Ahora bien, el criterio fundamental para determinar que un obrero padece de una **incapacidad total** es "la habilidad que posea después de la lesión o accidente para dedicarse a un trabajo que le produzca ingreso en forma ordinaria y de manera estable". *Rodríguez Ortiz v. Comisión Industrial*, 90 DPR 764, 775 (1964).

En cuanto a las condiciones emocionales que contempla la Ley Núm. 45, la normativa prevaleciente es que, para que sean compensables, además de la presencia palpable de una relación causal entre la condición y el empleo, estas deben originar por sí mismas una incapacidad para el trabajo o, alternativamente, agravar una incapacidad ya existente. *Díaz Ortiz v. F.S.E.*, 126 DPR 32, 38 (1990). En cualquiera de los casos, la limitación en la capacidad del obrero por la condición emocional reclamada debe probarse de manera convincente, mediante prueba pericial basada en exámenes psiquiátricos adecuados. *Íd*.; *Morell v. F.S.E.*, 110 DPR 709, 713 (1981).

El Tribunal Supremo de Puerto Rico ha reiterado el mencionado estándar probatorio debido a la naturaleza subjetiva e imprecisa de las condiciones emocionales. *Gónzalez Santiago v. F.S.E.*, 118 DPR 11, 14 (1986). Ello pues, ha advertido que las evaluaciones de aquellas reclamaciones basadas en tales condiciones presentan un reto en cuanto a la constatación de la existencia, naturaleza, magnitud y relación causal de la condición alegada y el empleo. *Íd*., a la pág. 13.

Ante esto, el Tribunal Supremo ha puntualizado que la CIPR tiene un deber ineludible de exigir que la evidencia médica que se desfile en la vista pública se aleje, en el mayor grado posible, de la especulación y la conjetura. *Mejías Román v. Comisión Industrial*, 111 DPR 629, 633 (1981).

Ello, pues una decisión fundada en prueba vaga, superficial e imprecisa resulta insostenible, por lo que los tribunales revisores debemos rechazar aquella prueba que albergue tal naturaleza, máxime cuando la misma descansa en hechos subsidiarios que no sustentan de manera adecuada las conclusiones a las que pretenden llegar. *Díaz Ortiz v. F.S.E.*, 126 DPR, a la pág. 40; *Alonso García v. Comisión Industrial*, 103 DPR 712, 715 (1975).

C

La Ley Núm. 45 creó dos (2) organismos administrativos con el fin de implantar y manejar la política pública perseguida por ella, a saber: el Fondo del Seguro del Estado y la Comisión Industrial. *Agosto Serrano v. F.S.E.*, 132 DPR 866, 874 (1993). En lo pertinente, la CIPR funciona como un foro esencialmente apelativo, ya que tiene funciones cuasi-judiciales y cuasi-tutelares para investigar y resolver todos los casos de accidentes ocupacionales en que no se llegue a un acuerdo en cuanto a la compensación por incapacidad parcial o total entre la CFSE y el obrero. *Íd*., a la pág. 875; 11 LPRA sec. 8. Por ende, este organismo es el árbitro final a nivel administrativo cuando se trata de controversias sobre los derechos provenientes de accidentes de trabajo. *Agosto Serrano v. F.S.E.*, 132 DPR, a la pág. 875.

El Reglamento de la CIPR Núm. 9464 (Reglamento 9464) del 26 de mayo de 2023, intitulado *Reglas de Procedimiento de la Comisión Industrial de Puerto Rico*, establece las reglas que habrán de gobernar los procedimientos adjudicativos ante dicha agencia. En su Regla 19, provee para la celebración de una vista pública en aquellos casos en que la CIPR emita una resolución sobre vista médica, y el obrero lesionado esté inconforme con la determinación. En lo pertinente a este recurso, la Regla 19.5 dispone:

> Una vez el caso quede sometido para adjudicación, la Comisión redactará una resolución en la cual incluirá una relación sucinta de lo acontecido en la vista pública, determinaciones de hechos y conclusiones de derecho que sustenten la decisión recomendada.

En aquellos casos en que el Ponente sea un Oficial Examinador someterá un informe con determinaciones de hechos y conclusiones de derecho a la atención de los Comisionados, el cual se hará formar parte de la resolución final.

De conformidad con la Sec. 3.13 de LPAUG en su inciso (f), se podrá conceder a las partes un término de quince (15) días después de concluir la misma para la presentación de propuestas sobre determinaciones de hechos y conclusiones de derecho. Las partes podrán voluntariamente renunciar a que se declaren las determinaciones de hechos.

### D

Tanto nuestra Constitución como la Constitución federal reconocen el derecho fundamental al debido proceso de ley. Const. EE.UU., Enmiendas V y XIV, 1 LPRA; Const. ELA Art. II, Sec. 7, 1 LPRA. Según lo ha establecido nuestra jurisprudencia, el debido proceso de ley salvaguarda el derecho de toda persona a un procedimiento justo, provisto de las garantías que reconoce la ley, tanto en el ámbito judicial como en el administrativo. *Com. Elect. PPD v. CEE et al.*, 205 DPR 724, 743 (2020).

De otra parte, el debido proceso de ley tiene dos vertientes: la sustantiva y la procesal. *Rafael Rosario & Assoc. v. Depto. Familia*, 157 DPR 306, 329 (2002). En su vertiente procesal, este principio impone al Estado la obligación de garantizar que la intervención con los intereses de libertad o propiedad del individuo se realice mediante un procedimiento que sea justo y equitativo. *Com. Elect. PPD v. CEE et al.*, 205 DPR, a la pág. 743. En el contexto de procedimientos adversativos, la jurisprudencia ha establecido que, para que se configure un debido proceso de ley, se deben cumplir los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y, (6) que la decisión se base en el récord. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 889 (1993).

En cuanto al alcance del debido proceso de ley en la esfera administrativa, el Tribunal Supremo ha reiterado que este no posee la misma rigidez que en los procedimientos adjudicativos ante los tribunales. *Román Ortiz v. OGPe*, 203 DPR 947, 954 (2020). Ello responde a la

necesidad de las agencias administrativas de tramitar sus asuntos con agilidad y a la pericia especializada que se presume tienen para atender y resolver los asuntos delegados por la ley. *Román Ortiz v. OGPe*, 203 DPR, a la pág. 954.

Conforme a lo anterior, es menester puntualizar que la Sección 3.1 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada (LPAU), establece que, en todo procedimiento adjudicativo formal ante una agencia, se salvaguardarán los siguientes derechos:

> (A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
>
> (B) Derecho a presentar evidencia.
>
> (C) Derecho a una adjudicación imparcial.
>
> (D) Derecho a que la decisión sea basada en el expediente.
>
> .     .     .     .     .     .     .     .     .

3 LPRA sec. 9641.

III

Los señalamientos del señor Vélez se pueden sintetizar en dos planteamientos primordiales. En primer lugar, sostiene que la resolución de la cual recurre debe ser revocada por no cumplir con el debido proceso de ley presuntamente establecido por la LPAU y por el Reglamento 9464. En segundo lugar, el lesionado recurrente aduce que la CIPR emitió su determinación final sin considerar lo testificado por el único facultativo médico que testificó en la vista pública ni la evidencia médica que fue sometida. Veamos.

En cuanto a su primer planteamiento, el señor Vélez sostiene que la CIPR erró al notificar la resolución recurrida sin anejar el informe del oficial examinador que presidió la vista pública celebrada el 21 de noviembre de 2024. El lesionado recurrente arguye, conforme a su interpretación de la LPAU y del Reglamento 9464, que dicha resolución debió ser redactada en su totalidad por el referido funcionario, y no por la presidenta de la CIPR,

tal cual fue notificada[17]. Aduce, además, que la ausencia del informe aludido en la resolución final del foro recurrido le violentó su debido proceso de ley, pues ello le privó de su derecho a evaluarlo y entender las razones por las cuales se le habían denegado los beneficios reclamados.

Por su parte, la CFSE aduce que la resolución final emitida por la CIPR contiene las determinaciones de hechos y las conclusiones de derecho suficientemente pormenorizadas, lo que permite una revisión judicial adecuada. Arguye que la ausencia del informe del oficial examinador en la resolución recurrida constituye una irregularidad procesal que no incide sobre el debido proceso de ley administrativo, debido a que la parte recurrente no pudo demostrar cómo se perjudicaban sus derechos fundamentales.

A tenor con el Reglamento 9464, cuando un caso queda sometido para su adjudicación, la CIPR tiene el deber de redactar una resolución que incluya una relación sucinta de lo acontecido en la vista pública, junto con las determinaciones de hechos y conclusiones de derecho que sustentan su decisión. Si la vista fue presidida por un oficial examinador, este deberá someter un informe para la consideración de la CIPR, que incluya determinaciones de hechos y conclusiones de derecho. Con estos elementos, la CIPR deberá entonces hacerlo formar parte de la resolución final.

Por su parte, en el ámbito administrativo, es harto conocido que el debido proceso de ley tiende a conducirse con mayor flexibilidad. Por lo tanto, en esta esfera, a las partes solo se le garantiza el derecho a una notificación oportuna, a presentar evidencia a su favor, a una adjudicación imparcial, y a que la decisión se base en el expediente administrativo.

Examinado el expediente del caso de marras, hemos podido apreciar que el informe del oficial examinador les fue notificado oportunamente a las partes el 30 de enero de 2025. No obstante, este

---

[17] Adelantamos que este argumento no nos convence, en tanto no surge del expediente que el oficial examinador designado por la CIPR tuviese facultad alguna para emitir una decisión final en el presente caso.

consistía, exclusivamente, de una exposición detallada de los testimonios y las argumentaciones vertidas durante la vista pública celebrada el 21 de noviembre de 2024, para la consideración posterior de la CIPR.

Es decir, no surge que el mismo contuviese determinaciones de hechos ni conclusiones de derechos mediante los cuales se adjudicaran los derechos de las partes litigantes. Más allá de la exposición fáctica de la vista, lo único que vertió el funcionario en su informe resulta ser una recomendación para que ambas partes sometieran sus respectivos memorandos con propuestas para la consideración de la CIPR, luego de lo cual el referido foro procedería a adjudicar la controversia.

En cambio, la *Resolución* recurrida sí contiene aquellas determinaciones de hechos y las conclusiones de derecho que particularizan y sustentan las razones por las cuales la CIPR decidió no otorgarle los beneficios por incapacidad total y permanente por condición mental al señor Vélez. Opinamos que, en efecto, dicha resolución contiene todos los elementos necesarios para que la parte recurrente pudiera ejercer de manera efectiva su derecho a impugnar tal determinación.

Aunque la mejor práctica hubiese sido que el foro recurrido incorporara el informe de su oficial examinador en su resolución final, nos persuaden los planteamientos de la CFSE en cuanto a que tal omisión no propende al supuesto incumplimiento con los preceptos del debido proceso de ley. Después de todo, surge que la CIPR notificó adecuadamente su *Resolución* y ya le había notificado a las partes copia del informe del oficial examinador. En igual medida, nos consta que dicho foro permitió la presentación de memorandos luego de celebrar la vista pública, así como la prueba documental propuesta por el señor Vélez, la cual el foro recurrido advirtió haber evaluado minuciosamente previo a formular su determinación final[18].

Ante ello, colegimos que el planteamiento de violación al debido proceso de ley no prospera. Es decir, el mero hecho de que el informe del

---

[18] *Véase*, apéndice del recurso, entrada núm. 2, pág. 1, SUMAC TA.

oficial examinador no se anejara a la *Resolución* objeto de revisión no privó al señor Vélez de su derecho a un debido proceso de ley. Por tanto, la CIPR no incurrió en el error señalado.

De otro lado, la segunda contención del señor Vélez, la cual agrupa sus últimos tres (3) señalamientos de error, se circunscribe a argumentar que la CIPR erró al no concederle los beneficios por incapacidad total y permanente por condición emocional al amparo de la Ley Núm. 45, contrario a lo testificado por el psiquiatra consultor de la CIPR. Al respecto, afirma que el testimonio pericial de dicho médico fundamentaba y favorecía su solicitud.

El lesionado recurrente arguye, además, que tal testimonio no fue impugnado ni rebatido por ninguna de las partes, por lo que el foro recurrido no podía descartarlo al momento de emitir la resolución recurrida. Añade que la CIPR tampoco consideró la prueba relacionada a las evaluaciones y el tratamiento psiquiátrico para fundamentar su denegatoria, por lo que su determinación no estuvo basada en la totalidad del expediente administrativo.

En casos como el que nos ocupa, nuestro ordenamiento jurídico exige que la CIPR analice la prueba pericial médica que evidencie, de manera convincente, el grado de incapacidad que un obrero reclama por causa de una condición emocional. Después de todo, una determinación basada en prueba vaga, superficial e imprecisa, producto de especulaciones y conjeturas, resultaría insostenible. Ello dado a que no se sustentarían adecuadamente las conclusiones a las que se pretende llegar con ese tipo de prueba.

En este caso, el señor Vélez padece de una condición emocional relacionada a una lesión ocupacional, por la cual alegó sufrir una incapacidad total permanente. Ante esto, reclamó los beneficios por incapacidad de esta naturaleza al amparo de la Ley Núm. 45. Debido a la magnitud de la incapacidad alegada, resultaba imperativo que la CIPR exigiera que la prueba médica presentada demostrara de manera

convincente y libre de suposiciones que el lesionado recurrente estaba totalmente inhabilitado para volver a trabajar por la condición mental que padece.

Luego de un examen del expediente administrativo y de la transcripción de la prueba oral de la vista pública, no podemos sino coincidir con las conclusiones formuladas por la CIPR en cuanto a su apreciación del único testimonio pericial desfilado. Veamos.

Al inicio de su testimonio, el doctor Batista indicó que la condición emocional que padece el señor Vélez era un desorden depresivo mayor severo sin rasgos sicóticos por historial, y que los medicamentos que utilizaba reflejaban que su tratamiento actual era uno de mantenimiento. Por esta razón, aseveró, de manera firme y concluyente, que su recomendación final era que se confirmara el diez por ciento (10%) de incapacidad por condición emocional previamente concedido[19], lo cual reafirmó contundentemente durante el transcurso de la vista[20]. Se desprende del récord que esta recomendación fue producto de su evaluación psiquiátrica del señor Vélez y del análisis de su historial médico, lo cual incluyó un examen del contenido de todas las hospitalizaciones psiquiátricas parciales que tuvo el señor Vélez[21], e incluso las notas de progreso de su psiquiatra privado[22].

No obstante, el doctor Batista testificó posteriormente que el lesionado recurrente no podría trabajar una jornada regular de ocho (8) horas. Sin embargo, surge expresamente que la única razón en la cual fundamentó esta interpretación era el conjunto de medicamentos que el señor Vélez tomaba[23]. A base de esto, infirió que la medicación podría causarle problemas de mareos o caídas mientras trabajaba[24]. Pese a ello,

---

[19] *Véase*, transcripción de la prueba oral (TPO) del 21 de noviembre de 2024, a la pág. 11.

[20] *Íd.*, a las págs. 13-14, 16, 18 y 20.

[21] *Íd.*, a la pág. 11.

[22] *Íd.*, a la pág. 20.

[23] *Íd.*, a las págs. 13 y 18.

[24] *Íd.*, a la pág. 14.

aseveró que el señor Vélez no se encuentra incapacitado para trabajar por tomar los medicamentos aludidos, pues el porciento de incapacidad que le fue otorgado no lo saca del mercado laboral[25].

Si bien este testimonio podría resultar contradictorio o especulativo, la realidad es que no surge del récord administrativo indicio alguno de que el señor Vélez hubiera sufrido de mareos o caídas que limitaran su desenvolvimiento en los quehaceres cotidianos. Por lo tanto, opinamos que el testimonio del perito consultor del foro recurrido no sostiene la conclusión de que el lesionado recurrente se encuentre incapacitado total y permanentemente para trabajar.

A igual conclusión llegamos en cuanto los argumentos del lesionado recurrente relacionados al aquilatamiento de la prueba documental. Basándose presuntamente en la totalidad del expediente administrativo, razona el propio lesionado recurrente que la condición mental de desorden depresivo mayor severo que padece es una incurable. En otras palabras, el señor Vélez plantea que, más allá del testimonio médico pericial, la evidencia sobre sus hospitalizaciones parciales psiquiátricas y las evaluaciones realizadas por los doctores Luis A. Feliciano y Batista Reyes satisfacen los requisitos para que su condición emocional sea considerada como una incapacidad total permanente.

Lo que nunca menciona el señor Vélez es que, en los informes médicos contenidos en el expediente administrativo, en los cuales la CIPR fundamentó su decisión, los psiquiatras consultores concluyen que, además de padecer los síntomas perniciosos de su condición mental, el lesionado recurrente no presentó ideas suicidas ni homicidas al momento de ser evaluado; tampoco manifestó sufrir de alucinaciones; y, durante sus evaluaciones, se encontraba alerta y orientado en persona, lugar y tiempo[26]. Aún más, contrario a lo alegado en su recurso, las notas de progreso del psiquiatra privado del señor Vélez, el doctor Jesús Rivero

---

[25] *Véase*, TPO del 21 de noviembre de 2024, a la pág. 19.

[26] *Véase*, apéndice del recurso, entradas 20 y 24, SUMAC TA.

Guevara, documentan que, durante los últimos años que este lo ha tratado y evaluado[27], el lesionado recurrente padecía de desorden bipolar severo sin rasgos psicóticos, pero no exhibía anomalías graves en su estado mental[28].

Empero, no hay controversia alguna planteada sobre la causalidad entre la condición emocional alegada por el señor Vélez y la incapacidad ocupacional por ella originada. Entendemos que la misma es una compensable al amparo de la Ley Núm. 45. Sin embargo, concluimos que el lesionado recurrente no pudo probar convincentemente que dicha condición emocional fuese una incurable, ni que le ocasionara una incapacidad total para reintegrarse al entorno laboral, tal cual reclamó ante la CFSE y, subsiguientemente, ante la CIPR. Por lo tanto, el resto de los errores imputados por el señor Vélez tampoco fueron cometidos.

Reiteramos que este Tribunal, en circunstancias como las que nos ocupan, no alterará las conclusiones de la CIPR, pues las mismas se encuentran sostenidas en la totalidad de la prueba desfilada ante ella. Así, no hallamos razón alguna que justifique nuestra intervención con la apreciación realizada sobre la misma.

IV

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[27] El intervalo de evaluación de estas notas de progreso transcurre desde el 18 de enero de 2018, hasta el 30 de mayo de 2024.

[28] *Véase*, apéndice del recurso, entradas 12, 21 y 22.